Walter H. HOWARD, Edward McCorvey, Weldon Allen, Dorthy Collins, John Funk, Barbara Land, Bettye Rusche, Russel Smith, and Frank Way, Plaintiffs,

v.

GLOBE LIFE INSURANCE CO., Defendant.

John H. EDWARDS and Chris Johnson, Plaintiffs,

v.

MAYFLOWER NATIONAL LIFE INS. CO., Defendant.

Randall W. PITTS, Mary P. Pitts, Chris Bakich, Sharral Carnley, Joyce Foster, Roy Gay, Alphonza Randall, Peggy Smith, Sally Snider, Jerry Sweeten, Debra Thomas, Shan Watson, and Donald Wilkerson, Plaintiffs,

v.

UNION FIDELITY LIFE INSURANCE CO., Defendant.

Salvadore J. SERIO and Rebecca B. Serio, Plaintiffs,

v.

FIRST LIFE ASSURANCE CO., n/k/a The Mega Life & Health Ins. Co., Defendant.

Randall W. PITTS, Mary P. Pitts, Robert F. Caristi, Sr., Harrison Norris, Sr., and Lucille Norris, Plaintiffs,

v.

CENTURION LIFE INSURANCE CO., Defendant.

Nos. 3:96cv314/RV, 3:96cv341/RV, 3:96cv345/RV, 3:96cv365/RV and 3:96cv478/RV.

United States District Court, N.D. Florida, Pensacola Division.

Dec. 27, 1996.

James Franklin McKenzie, McKenzie & Soloway, Pensacola, FL, for Walter H. Howard, Edward McCorvey, Weldon Allen, Dorothy Collins, John Funk, Barbra Land, Bettye Rusche, Russel Smith, Frank Way, John H. Edwards, Chris Johnson, Salvadore J. Serio, Rebecca B. Serio, Randall W. Pitts, Mary P. Pitts, Robert F. Caristi, Sr., Harrison Norris, Sr., Lucille Norris, Chris Bakich, Sharral Carnley, Joyce Foster, Roy Gay, Alphonza Randall, Peggy Smith, Sally Snider, Jerry Sweeten, Debra Thomas, Shan Watson, Donald Wilkerson.

Davis Duane Carr, Frank L. Parker, Pamela A. Moore, James W. Lampkin, Carr, Alford, Clausen, McDonald, L.L.C., Mobile, AL, for Globe Life Ins. Co.

Davis Duane Carr, Pamela A. Moore, James W. Lampkin, Carr, Alford, Clausen, McDonald, L.L.C., Mobile, AL, for Mayflow-

er Nat. Life Ins. Co., Mega Life & Health Ins. Co., Union Fidelity Life Ins. Co.

David Lee McGee, Beggs & Lane, Pensacola, FL, for Centurion Life Ins. Co.

## OMNIBUS ORDER

VINSON, Chief Judge.

Pending are the plaintiffs' motions to remand to state court in the five cases identified above.[1]

### I. BACKGROUND

Plaintiffs originally filed their complaints as separate class actions in the Circuit Court of Escambia County, Florida.[2] The state court complaints all alleged several state law claims including common law and statutory fraud, unjust enrichment, civil conspiracy, and negligent misrepresentation. There are no federal claims alleged. The claims arose out of the alleged sale of excessive credit life insurance by the defendant insurance companies to the putative class members. Specifically, the putative class members claim that a defendant sold them credit life insurance in an amount greater than that required to pay off the balance of their loan, thereby violating Section 627.679(1)(a), Florida Statutes (1995). The class seeks declaratory and injunctive relief, monetary damages, and reasonable attorneys' fees and costs.

Each defendant removed this action from state court based on diversity of citizenship jurisdiction under Title 28, United States Code, Sections 1332 and 1441. Plaintiffs timely moved to remand each of the cases. Plaintiffs concede that the diversity of citizenship required by Section 1332 is present in each case, but assert that the amount in controversy does not exceed the $50,000 jurisdictional requirement. Plaintiffs contend that the individual class members' claims in each case cannot be aggregated to reach the jurisdictional amount required and, there-

fore, this court does not have jurisdiction. Although they acknowledge that the compensatory damages amount to only "a few hundred dollars of premiums allegedly overcharged," defendants raise several grounds in opposition to plaintiffs' contentions. First, they claim that each defendant's compliance cost associated with the injunctive and declaratory relief requested by plaintiffs would far exceed the $50,000 amount. Second, defendants point out that plaintiffs could (and likely will) amend their complaints to allege punitive damages in each case, and thereby place the required amount in controversy. Third, defendants also contend that plaintiffs included separate prayers for relief in each individual count in their complaints and that the possible recovery for each claim in a separate count should be considered when determining if the amount in controversy requirement has been satisfied. Finally, the defendants claim that plaintiffs' potential attorneys' fees award should be included in the computation of the amount in controversy.

### II. ANALYSIS

■ Any civil case filed in state court may be removed by the defendant to federal court if the case could have been brought originally in federal court. See 28 U.S.C. § 1441(a); Caterpillar Inc. v. Williams, 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987). Tapscott v. MS Dealer Serv. Corp., 77 F.3d 1353, 1356 (11th Cir. 1996); B., Inc. v. Miller Brewing Co., 663 F.2d 545 (5th Cir.1981). In considering a motion to remand when the plaintiff and defendant disagree on issues of jurisdiction, questions or doubts are to be resolved in favor of returning the matter to state court. Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (11th Cir.1994).

■ In order for a federal court to have jurisdiction over a case pursuant to Title 28,

---

1. Although each case is slightly different and various grounds for removal are presented by the defendants in each case, the cases are essentially identical and will be considered together. Another five similar cases are also pending before Judge Collier of this court, and it appears that all ten cases raise the same issues with respect to remand.

2. The plaintiffs have not yet moved for class certification, but I will treat plaintiffs in each

case as though they are a class for the purpose of their motion to remand. See 3B J. Moore, Moore's Federal Practice, ¶ 23.50 (2d ed.1985)(stating "[i]n the interim between the commencement of the suit as a class action and the court's determination as to whether it may be so maintained it should be treated as a class suit"); City of Inglewood v. City of Los Angeles, 451 F.2d 948, 951 (9th Cir.1971); Fountain v. Black, 876 F.Supp. 1294 (S.D.Ga.1994).

United States Code, Section 1332, the amount in controversy must currently exceed $50,000, exclusive of costs and interest.[3] Where the plaintiff fails to request a specific damage award in the complaint, the burden is on the defendant to prove by a preponderance of the evidence "that the amount in controversy more likely than not exceeds the $50,000 jurisdictional requirement." *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1357 (11th Cir.1996); *see De Aguilar v. Boeing*, 11 F.3d 55 (5th Cir.1993); *Gafford v. General Electric Co.*, 997 F.2d 150, 158 (6th Cir.1993).

Here, there are four separate grounds advanced by the defendants for satisfying the jurisdictional amount. Each will be analyzed separately.

## (A) *AGGREGATION OF CLAIMS.*

■ First, the defendants contend that even though each of the plaintiff's claims will be relatively small, the aggregate of all class members' claims in each case will undoubtedly exceed $50,000. Class aggregation alone, however, is not enough. In 1969, the United States Supreme Court held that class plaintiffs cannot aggregate their individual claims in order to meet the jurisdictional dollar amount in controversy requirement of Title 28, United States Code, Section 1332. *Snyder v. Harris*, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969). The effect of *Snyder* is to require at least *one* class plaintiff to meet the federal jurisdictional amount.

In 1973, the Supreme Court, further restricting the diversity jurisdictional limitations of its *Snyder v. Harris* decision, held that in addition to the plaintiffs' inability to aggregate individual claims, each individual putative class plaintiff had to satisfy the amount in controversy, or be dismissed from the class action. *Zahn v. International Paper Co.*, 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973). Therefore, the Supreme Court's holding effectively eliminated federal jurisdiction in state-law class actions where each putative plaintiff's claim did not meet the jurisdictional amount.

■ To the extent that *Snyder* and *Zahn* hold that the claims of several plaintiffs cannot be aggregated in order to satisfy the jurisdictional amount in controversy (unless the plaintiffs are enforcing a common and undivided interest or right), it continues to be well-settled law. However, *Zahn's* requirement that each putative class plaintiff must meet the diversity jurisdictional amount in controversy requirement now seems to have been overruled by the enactment of the supplemental jurisdiction statute [Pub.L. No. 101–650, 104 Stat. 5113 (codified as amended at 28 U.S.C. § 1367 (1995)) ]. *See Stromberg Metal Works, Inc. v. Press Mechanical, Inc.*, 77 F.3d 928 (7th Cir.1996); *In re Abbott Laboratories*, 51 F.3d 524 (5th Cir.1995); *see also* 1 J. Moore, *Moore's Federal Practice* ¶ 0.97[5] (Supp.) (stating that by its express terms, 28 U.S.C. § 1367 plainly overrules *Zahn).* The conclusion that *Zahn* has been overruled is based, in large part, on the fact that Section 1367(a) unambiguously grants federal courts supplemental jurisdiction over all claims that are part of the same case or controversy as the claims over which the court has original jurisdiction. Thus, if one plaintiff's claim meets the jurisdictional requirements, then the other plaintiffs may be within the court's supplemental jurisdiction. Further, it is noteworthy that Section 1367(b) does not specifically exclude class actions from application of the statutory supplemental jurisdiction, although it does exclude other types of cases.

I conclude that the Fifth and Seventh Circuits have correctly construed the effect of Section 1367 on *Zahn,* in *Stromberg Metal Works, Inc. v. Press Mechanical, Inc.,* 77 F.3d 928 (7th Cir.1996), and *In re Abbott Laboratories,* 51 F.3d 524 (5th Cir.1995). I am also of the opinion that a number of district court decisions to the contrary have misconstrued the effect of Section 1367.[4] As

---

3. Congress has raised the jurisdictional amount to $75,000, effective in January 1997, but that has no effect on these cases.

4. *See, e.g., North American Mechanical Services Corp. v. Hubert,* 859 F.Supp. 1186 (C.D.Ill.1994); *Riverside Transportation, Inc. v. Bellsouth Telecommunications, Inc.,* 847 F.Supp. 453 (M.D.La.

1994); *Stoumen v. Public Serv. Mut. Ins. Co.,* No. Civ. A 94–0233, 1994 WL 111355 (E.D.Pa.1994); *Leroy Cattle Co. v. Fina Oil & Chem. Co.,* No. Civ. A 93–1286–MLB, 1994 WL 151105 (D.Kan. 1994); *Leung v. Checker Motors Corp.,* No. 93–C–2704, 1993 WL 515470 (N.D.Ill.1993); *Benfield v. Mocatta Metals Corp.,* No. 91 Civ. 8255(LJF), 1993 WL 148978 (S.D.N.Y.1993); *Hairston v.*

the law now stands, it is my determination that all putative class members may sue together, as a class in federal court, as long as at least one class representative meets the jurisdictional requirements.

Nevertheless, in cases where no single plaintiff's claim satisfies the amount in controversy requirement,[5] such as the present cases, the issue of Section 1367's effect on *Zahn* does not arise. The nonaggregation rule still applies, the supplemental jurisdiction is not present, and a federal court does not have jurisdiction over any of the plaintiffs' claims. *See Anthony v. Security Pacific Financial Services, Inc.*, 75 F.3d 311, 315 (7th Cir.1996); *Packard v. Provident National Bank*, 994 F.2d 1039, 1045 (3d Cir. 1993). In the absence of a common and undivided interest claimed by all plaintiffs, their claims cannot be aggregated.

### (B) *DECLARATORY AND INJUNCTIVE RELIEF.*

Recognizing that the individual plaintiffs' claims cannot be aggregated to reach the requisite amount, the defendants contend that I should determine the amount in controversy from each defendant's perspective because it will cost each defendant in excess of $50,000 to comply with the injunctive and declaratory relief requested by plaintiffs. The Eleventh Circuit has apparently not had an opportunity to deal with this specific issue, but Defendants rely upon several reported decisions that have viewed the amount in controversy from the defendant's viewpoint. However, only two of those reported decisions involve class actions, while the rest were not subject to the rule against aggregation. Neither of the two class action cases is similar to the present case. Only one, *Committee for G.I. Rights v. Callaway*, 518 F.2d 466, 472 (D.C.Cir.1975), is a circuit decision. It involved the old version of Section 1331(a), the federal question jurisdictional statute, which then also contained a jurisdictional

amount. It found that each member of the plaintiff class actually met the jurisdictional amount, but in dictum, agreed that the jurisdictional amount "is also satisfied with respect to all of the plaintiffs because of the costs that the [defendant] would incur ... " 518 F.2d at 472. It did not attempt to analyze application of "either party's perspective" in a class action context.

Similarly, in the second decision involving a class action relied upon by the defendants, *Martin v. Granite City Steel Corp.*, 596 F.Supp. 293 (S.D.Ill.1984), after finding that the class plaintiffs' claims for punitive damages and compensatory damages seemed to exceed the jurisdictional amount for each plaintiff (under *Zahn*), the Court measured the plaintiffs' claim for equitable relief under the "either viewpoint rule," and included a pro rata share of that amount for each plaintiff. Alternatively, it found that the plaintiffs were seeking to enforce "common and undivided interests," which allowed aggregation. Thus, this case provides no support to the defendants' contention here. Inclusion for each plaintiff of a pro rata share of the impact on the defendant of the injunctive relief is not what the defendants seek here.

Most importantly, Defendants rely on a recent decision of this court in *Hastings v. Ford Life Insurance Co.*, 96cv291 (N.D.Fla. 1996), where, in the companion cases, Judge Lacey A. Collier determined that the cost to the defendant in complying with an injunction was sufficient to satisfy the jurisdictional amount in controversy. Although I would like very much to simply follow the *Hastings* rationale, I must reluctantly conclude that I cannot.

In class actions, it generally seems to be improper to look to the effect of an adverse judgment on the defendant, or the amount it would cost the defendant to comply with an injunction, in order to determine if the

---

*Home Loan and Investment Bank*, 814 F.Supp. 180 (D.Mass.1993); *Mayo v. Key Financial Services, Inc.*, 812 F.Supp. 277 (D.Mass.1993); *Averdick v. Republic Financial Services, Inc.*, 803 F.Supp. 37 (E.D.Ky.1992); *Bradbury v. Robertson–Ceco Corp.*, No. 92–C–3408, 1992 WL 178648 (N.D.Ill. July 22, 1992); *Griffin v. Dana Point Condominium Ass'n*, 768 F.Supp. 1299 (N.D.Ill.1991).

**5.** Although not implicated in this case, it appears that the class member meeting the jurisdictional amount may not have to be named, as long as at least one identified member of the class meets the requirement.

amount in controversy has been satisfied. *See* 1 J. Moore, *Moore's Federal Practice* ¶¶ 0.91[1], 0.97[5] at pp. 819–20, 932 (Supp.) (although the practice of determining the amount in controversy by looking at the cost to either party is the better view in bipolar litigation, courts should refuse to evaluate the amount in controversy from the defendant's viewpoint in multiple party cases, due to the rules against aggregation); *see also Packard v. Provident National Bank,* 994 F.2d 1039, 1050 (3d Cir.), *cert. denied sub nom. Upp v. Mellon Bank, N.A.,* 510 U.S. 964, 114 S.Ct. 440, 126 L.Ed.2d 373 (1993); *Snow v. Ford Motor Co.,* 561 F.2d 787 (9th Cir.1977); *Lonnquist v. J.C. Penney Co.,* 421 F.2d 597 (10th Cir.1970); *Massachusetts State Pharmaceutical Ass'n v. Federal Prescription Service,* 431 F.2d 130 (8th Cir. 1970); *Shelly v. Southern Bell Telephone & Telegraph Co.,* 873 F.Supp. 613 (M.D.Ala. 1995).

There are several reasons why this must be considered the better reasoned view. A class action of up to a thousand or more plaintiffs will invariably involve more than $50,000 from defendant's viewpoint, even if each plaintiff has a very small individual claim. To remove a case to federal court, the case has to be one that plaintiff could have originally filed in federal court. As discussed above, in the absence of a single right or a common and undivided interest, plaintiffs are prohibited from aggregating separate and distinct claims to meet the jurisdictional amount in controversy. Therefore, to evaluate claims for injunctive or declaratory relief, federal courts must determine whether the pro rata value of the injunction to any plaintiff is sufficient to meet the jurisdictional amount in controversy. While this can be measured by the defendant's point of view, only the individual plaintiff's pro rata share may be included as part of the individual plaintiff's claim for determining the jurisdictional amount. To do otherwise obviously violates the nonaggregation rule.

█ If the plaintiffs cannot aggregate their separate and distinct claims to satisfy the jurisdictional requirement, then it must follow that a defendant cannot do so either. *See Snow v. Ford Motor Co.,* 561 F.2d 787 (9th Cir.1977). In short, the jurisdictional amount requirement cannot be determined by the total monetary impact of the injunction on each defendant. *See Lonnquist v. J.C. Penney Co.,* 421 F.2d 597 (10th Cir. 1970). Here, it seems undeniable that plaintiffs' claims for injunctive and declaratory relief, as well as compensatory damages, do not represent either a single right or a common and undivided interest. Each individual plaintiff entered into a contractual relationship with a defendant for the purchase of credit life insurance. Plaintiffs' claims in this case arise out of that relationship, and each plaintiff could bring a separate and individual action against a defendant, if the plaintiff's claim is meritorious. *See Hall v. ITT Financial Services,* 891 F.Supp. 580 (M.D.Ala.1994) (holding that contractual claims based on the sale of credit life insurance were separate and distinct, even though the plaintiffs also sought injunctive relief); *see also More v. Intelcom Support Services, Inc.,* 960 F.2d 466, 473 (5th Cir.1992); *Griffith v. Sealtite Corp.,* 903 F.2d 495, 498 (7th Cir.1990); *Burns v. Massachusetts Mutual Life Ins. Co.,* 820 F.2d, 246, 250 (8th Cir.1987). Therefore, the valuation of the injunctive relief claimed can be measured by the impact or effect upon the defendant in each case. But even assuming that the impact or effect upon a defendant would be well in excess of $50,000, there is nothing in the record to indicate that the pro rata amount allocable to any plaintiff would be even close to $50,000. However, I will include a pro rata share of that cost to the defendant, if it can be estimated, upon a proper record showing.

### (C) *PUNITIVE DAMAGES.*

█ Next, defendants contend that claims for punitive damages must be included when determining the total amount in controversy, and that a class action claim for punitive damages should be considered in the aggregate, without proration. *See Bell v. Preferred Life Assur. Soc.,* 320 U.S. 238, 64 S.Ct. 5, 88 L.Ed. 15 (1943); *Tapscott v. MS Dealer Serv. Corp.,* 77 F.3d 1353, 1356 (11th Cir.1996). I agree. However, the complaints in these cases do not presently seek punitive damages. When considering punitive damages as part of the amount in controversy, it must be to the extent that the plaintiffs allege them in their complaint. *See*

*Bell v. Preferred Life Assur. Society*, 320 U.S. 238, 240, 64 S.Ct. 5, 6, 88 L.Ed. 15 (1943). A defendant's right to remove is determined according to allegations of the complaint at the time the defendant files the notice of removal. *Keene Corp. v. United States*, 508 U.S. 200, 206–08, 113 S.Ct. 2035, 2040, 124 L.Ed.2d 118 (1993) (citing cases); *Pullman Co. v. Jenkins*, 305 U.S. 534, 537, 59 S.Ct. 347, 348–49, 83 L.Ed. 334 (1939); *see also Angus v. Shiley, Inc.*, 989 F.2d 142, 145 (3d Cir.1993) (as a general rule, the amount in controversy must be decided from the complaint itself) (citing *Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 353, 81 S.Ct. 1570, 1573, 6 L.Ed.2d 890 (1961)).

Recognizing this prerequisite, defendants contend that Florida law provides for recovery of punitive damages in several of the plaintiffs' claims, and notes that plaintiffs could amend their complaints at any time to seek punitive damages. In fact, Florida law requires that a factual basis must be alleged to claim punitive damages, and the Florida practice usually necessitates an amended complaint after some discovery has been done. Defendants argue that plaintiffs almost certainly will attempt to seek punitive damages here. Therefore, defendants argue that punitive damages should be considered in making the amount in controversy determination.

▇▇▇ However, in determining the amount in controversy, a claim for punitive damages is examined even more carefully than a claim for actual damages. *Zahn v. International Paper Co.*, 469 F.2d 1033 (2d Cir.1972), *aff'd*, 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973); *Brown v. Bank of America Nat. Trust & Sav. Ass'n*, 281 F.Supp. 82, 84 (D.Ill. 1968). Florida law requires that a party seeking to assert a claim for punitive damages must first request leave of court and obtain a determination from the court that evidence in the record, or proffered by the claimant, provides a reasonable basis for the recovery of punitive damages. Plaintiffs have not yet done that. Defendants' belief that plaintiffs are waiting for the case to be remanded to state court before they amend their complaint to seek punitive damages is indicative of the gamesmanship involved. If and when that happens, the case would then become removable———but not until then.

*See* 28 U.S.C. § 1441; *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1356 (11th Cir. 1996).

I am also very troubled by the one-year limitation of Section 1446(b), which may allow the plaintiffs to amend and add the punitive damages claim after the case has been pending for over one year, without any possibility of removal by the defendants. Such tactical maneuvers, if attempted, should be quashed by the trial court by denying leave to amend in that way.

**(D) *MULTIPLE CLAIMS FOR RELIEF.***

Next, defendants contend that the total amount recoverable under each of plaintiffs' claims should be considered in determining the amount in controversy, since plaintiffs in most of the cases have four separate claims and prayers for relief in each complaint. In support of this contention, defendant relies upon an unpublished decision from the Northern District of Alabama, *Pipes v. American Security Insurance Co.*, CV96–H–206–NE (N.D.Ala. February 29, 1996) (Hancock, J.). In *Pipes*, the court was faced with a complaint containing three separate counts and prayers for relief. Although each prayer for relief sought less than $50,000 in damages, the court determined that each individual plaintiff, given the fact that they were seeking up to $50,000 on each one of their three claims, met the amount in controversy. In *Pipes*, Judge James H. Hancock distinguished the Eleventh Circuit's decision in *Burns v. Windsor Ins. Co.*, 31 F.3d 1092 (11th Cir.1994), a case where federal jurisdiction was determined not to exist, on the basis that in *Burns* there was only one aggregate prayer for relief, and the plaintiff there had offered to settle all of his combined claims for $45,000.

▇▇▇ I agree with Judge Hancock's determination in *Pipes* that multiple claims for relief can and should be considered together in determining the amount in controversy, since there may be multiple recoveries if plaintiffs succeed on each claim. However, the question presented here is not whether plaintiffs may recover on the separate claims, but whether defendants have established, considering all claims, "that the amount in

controversy, more likely than not, exceeds the $50,000 dollar jurisdictional requirement." *Tapscott v. MS Dealer Serv. Corp.,* 77 F.3d 1353, 1357 (11th Cir.1996). To this end, defendants have not made an attempt to estimate the value of each individual plaintiff's claim, or the total of such individual claims under all counts of the complaint. This case is based on alleged wrongdoing in relation to small insurance premium payments. It is undisputed that any monetary damages for each plaintiff will be small, regardless of the legal basis for the claim. Therefore, even assuming plaintiffs succeed on all four types of claims, I find it very unlikely that the total amount of any plaintiff would reach the jurisdictional requirement (without taking into consideration the attorney's fees). Even when I include a pro rata share of the defendant's cost of compliance with the injunctive and declaratory relief, the total amount seems to be well under $50,000 for each plaintiff. Therefore, the defendants have not met their burden on this ground.

### (E) *ATTORNEY'S FEES.*

Finally, however, defendants contend that I should consider plaintiffs' claim for attorney's fees in the aggregate, and not on a pro rata basis, when determining the amount in controversy, because any recovery of attorney's fees "will be added to the fund which is recovered for the class." *See Missouri State Life Ins. v. Jones,* 290 U.S. 199, 54 S.Ct. 133, 78 L.Ed. 267 (1933) (where reasonable attorney's fees are a part of a statutory or contract action, and have been requested by plaintiffs, their value will be assessed as part of the amount in controversy); *Springstead v. Crawfordsville State Bank,* 231 U.S. 541, 34 S.Ct. 195, 58 L.Ed. 354 (1913). As already mentioned, a putative class may not aggregate their separate and distinct claims to satisfy the jurisdictional amount in controversy requirement. In accordance with this nonaggregation principle, attorney's fees have frequently been attributed to all class members on a pro rata basis. *Goldberg v. CPC Intern., Inc.,* 678 F.2d 1365, 1367 (9th Cir.), *cert. denied,* 459 U.S. 945, 103 S.Ct. 259, 74 L.Ed.2d 202 (1982); *Spellman v. Meridian Bank,* 1995 WL 764548 (3d Cir. Feb.16, 1996). *See also, Ratliff v. Sears Roebuck & Co.,* 911 F.Supp. 177 (E.D.N.C.

1995); *Quebe v. Ford Motor Co.,* 908 F.Supp. 446 (W.D.Tex.1995); *Visintine v. Saab Auto. A.B.,* 891 F.Supp. 496, 499 (E.D.Mo.1995); *Gilman v. Wheat, First Securities, Inc.,* 896 F.Supp. 507 (D.Md.1995); *Bassett v. Toyota Motor Credit Corp.,* 818 F.Supp. 1462, 1466 (S.D.Ala.1993); *National Org. For Women v. Mutual of Omaha Ins.,* 612 F.Supp. 100, 108 (D.D.C.1985).

Attorney's fees in class actions present unusual circumstances, and it is only now that courts are beginning to recognize the true nature of the attorney's representation. The traditional image of the lawyer as an independent professional providing advice and advocacy on behalf of a client simply does not apply to class actions. Instead, in class actions, the "attorneys function essentially as entrepreneurs who bear a substantial amount of the litigation risk and exercise nearly plenary control over all important decisions in the lawsuit." Jonathan R. Macey & Geoffrey P. Miller, *The Plaintiffs Attorney's Role in Class Action and Derivative Litigation: Economic Analysis and Recommendations for Reform,* 58 U. Chi. L.Rev. 1,3 (1991). Therefore, since the nominal named plaintiffs serve no real role in the class litigation, it has been proposed that the attorneys should be allowed to bring the litigation in the name of "John Doe," or other fictional plaintiffs. *Id.* Further, the trial court should perhaps consider the option of auctioning the legal representation of the class to the attorneys who can provide the best representation at the lowest cost. *Id. See also, In re Oracle Securities Litigation,* 131 F.R.D. 688 (N.D.Cal.1990). Simply stated, most of the present day class actions are lawyer initiated and lawyer managed, with the primary motivation for bringing the class action being the anticipated attorney's fee. *See* John C. Coffee, Jr., *Understanding the Plaintiff's Attorney: The Implications of Economic Theory for Private Enforcement of Law Through Class and Derivative Actions,* 86 Colum. L.Rev. 669 (1986).

Therefore, the outmoded concept of viewing the attorney as the agent for each plaintiff and allocating a pro rata share of the attorney's fee to each plaintiff no longer seems either reasonable or appropriate.

Certainly, the unnamed members of the class do not consider the action's attorney as their own attorney. They made no agreement to retain or compensate the lawyer. There is no obligation on their part to compensate the lawyer, or even reimburse the litigation costs, in the event that the lawsuit proves to be unsuccessful. Even the named plaintiffs are unlikely to have made such an agreement. The fee for the class attorneys will go directly to the lawyers——not to the plaintiffs for further payment of their fees. In almost every respect, the award of an attorney's fee against a defendant is more comparable to a punitive damage award than to awards of plaintiffs' compensatory damages or other specific benefit to an individual plaintiff. In this circuit, such a claim should be considered in the aggregate, without proration. *See Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1356 (11th Cir.1996).

Accordingly, I conclude that the claim for attorney's fees in each of these cases is one that should be considered in the aggregate. Although pro rata distribution of the attorney's fees to the plaintiffs may be appropriate in other cases, such is not the case here. The applicable Florida statute that provides for attorney's fees in this type of claim reads:

> (1) Upon the rendition of a judgment or decree by any of the courts of this state against an insurer and in favor of any named or omnibus insured or the named beneficiary under a policy or contract executed by the insurer, the trial court or, in the event of an appeal in which the insured or beneficiary prevails, the appellate court shall adjudge or decree against the insurer and in favor of the insured or beneficiary a reasonable sum as fees or compensation for the insured's or beneficiary's attorney prosecuting the suit in which the recovery is had.
>
> \* \* \* \* \* \*
>
> (3) When so awarded, compensation or fees of the attorney shall be included in the judgment or decree rendered in the case.

Fla. Stat. § 627.428 (1995). If the putative class prevails in this case, the class's attorney will be entitled to an award of attorney's fees under this statute; it will not be paid to the plaintiffs. The court will undoubtedly be required to determine the amount using a lodestar methodology, and that fee will go directly to the plaintiff's attorney. This attorney's fee is entirely separate from any award of damages to the plaintiffs and is adjudged "against the insurer." The amount of the fee award is determined on the basis of the amount of work the attorney performed, and not on a percentage of the recovery basis.

The award of attorney's fees provided by this statute is not meant to compensate the plaintiffs for their injuries. Instead, an award of attorney's fees is meant to shift the cost of bringing the action onto the wrongdoer, who is ultimately responsible for the action's institution. It is not measured or computed on the basis of the damages recovered. Furthermore, the court's focus in awarding attorney's fees is not on any one individual plaintiff; instead, the award is based on the effort, experience, and expertise of the attorney(s) involved. The attorney for the class represents an aggregate group, both the named plaintiffs and those unnamed. There will be only one fee award, regardless of the number of plaintiffs or class members. If the class prevails to a judgment in plaintiffs' favor, even if only for nominal damages, that triggers the fee entitlement.

As I've already noted, Plaintiffs' claims for attorney's fees in each of these cases is similar to the claims for punitive damages in *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1356 (11th Cir.1996), and in *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326 (5th Cir.1995). There, the courts determined that although punitive damages do not easily fit into either the separate and nonaggregable, or common and undivided interest, classifications, they were more like the latter than the former, and, therefore, any punitive damage award should be counted without proration in determining the jurisdictional amount. *See Allen v. R & H Oil & Gas Co.*, 63 F.3d at 1333. Even though each individual plaintiff could have brought a separate suit and sued individually for punitive damages, punitive damages are collective and aggregable in nature, and should be considered as a whole in determining whether the jurisdictional amount in controversy exists.

I find the same is true here with attorney's fees. While each individual plaintiff could sue on his own behalf, in separate cases, the right to seek attorney's fees is "based on public policy as expressed through state statutes," not some right that is separate and individual to each plaintiff. *Allen v. R & H Oil & Gas Co.,* 63 F.3d at 1333. Therefore, finding that the possible award of attorney's fees in this case should be considered in the aggregate, I find that the requisite amount in controversy is satisfied and that the case was properly removed by defendants to federal court.

In the alternative, the Fifth Circuit Court of Appeals' decision in *In re Abbott Laboratories,* 51 F.3d 524 (5th Cir.1995), may also apply here. There, the Fifth Circuit examined two Louisiana state statutes and determined that the Louisiana legislature specifically provided for an award of attorney's fees to the successful class representative parties. The Fifth Circuit attributed the attorney's fees solely to the identified representative parties, and determined on that basis that they satisfied the jurisdictional amount in controversy. The court then went on to determine that the all-members-of-class requirement of *Zahn* had been overruled by the enactment of Section 1367, and that the court had supplemental jurisdiction over the other members of the class who did not otherwise meet the amount in controversy. 51 F.3d at 525. Although I recognize that the applicable Florida statute does not specifically address attorney's fees in the class action context, it does seem to imply that the "named or omnibus insured" is entitled to an attorney's fee for the insured's attorney. Since there are only a few named plaintiffs in these cases, attributing an aggregate fee to them still will likely result in an amount in excess of $50,000 each if the case should go to trial and the plaintiffs prevail.

Finally, I have to recognize that there are currently ten of these cases pending in this court, and all plaintiffs are represented by the same attorney. The reality is that the attorneys' fees for these virtually identical actions against separate defendants will probably be resolved in some unified manner. They should be viewed that way under the law of removal.

## III. CONCLUSION

Therefore, for all of the above reasons, the motions to remand are DENIED.