**James GAVRILES and Sahar Yaldoo, Individually and as Representatives of a class of all those similarly situated, Plaintiffs,**

v.

**VERIZON WIRELESS, an assumed name of Primeco Personal Communication Limited Partnership, a Delaware Partnership, Defendant.**

**No. 01–CV–71598–DT.**

United States District Court, E.D. Michigan, Southern Division.

March 29, 2002.

John T. Alexander, Southfield, MI, Gregory D. Demopoloulos, Livonia, MI, for plaintiffs.

Todd R. Mendel, Detroit, MI, Daniel Costello, Columbus, OH, for defendant.

*OPINION AND ORDER REMANDING CASE TO WAYNE COUNTY CIRCUIT COURT*

ROSEN, District Judge.

## I. *INTRODUCTION*

The above-captioned action was originally filed in Wayne County Circuit Court on March 22, 2001 and timely removed to this Court on April 24, 2001. The matter is presently before the Court on (1) the Court's Order to Show Cause directing Defendant Verizon Wireless, the removing party, to show cause why this case should not be remanded to the state court for lack of federal subject matter jurisdiction, and (2) Plaintiffs' contemporaneously filed Motion to Remand. The parties have fully briefed the pertinent jurisdictional issues, and having reviewed and considered the parties' briefs, supporting documents and the entire file of this matter, the Court has concluded that oral argument is not necessary. Therefore, pursuant to Eastern District of Michigan Local Rule 7.1(e)(2), this matter will be decided on the briefs. This

Opinion and Order sets forth the Court's ruling.

## II. *FACTUAL AND PROCEDURAL BACKGROUND*

Defendant Verizon Wireless ("Verizon") is a provider of cellular telephone service. Plaintiffs James Gavriles and Sahar Yaldoo are Verizon customers. Both Gavriles and Yaldoo are Michigan citizens. Verizon is an assumed name of NewPar, a Delaware general partnership.[1] The general partners in NewPar are Verizon Wireless (VAW), LLC and AirTouch Cellular Eastern Region, LLC, both of which are limited liability companies whose sole member is Celco Partnership. None of the general partners of Celco are Michigan citizens. *See* Notice of Removal, ¶¶ 7–17.[2]

Verizon's service contract for cellular telephone service provides a limited monthly usage in exchange for a fixed monthly charge. A customer's monthly usage which exceeds the specified maximum monthly limit incurs additional per minute usage charges. Plaintiff James Gavriles contracted for Verizon's "Local 125 plan," which provides 125 minutes of airtime per month at a monthly rate of $25.00. There is no specific allegation as to Plaintiff Sahar Yaldoo's contract, how-ever, the Court assumes for purposes of this Opinion that Plaintiff Yaldoo has a contract with Verizon for a similar plan.[3]

Verizon's business practice measures monthly usage by aggregating the time for individual calls where the time for each call is rounded up to the next whole minute increment. Verizon includes the time of both incoming and outgoing calls in the monthly usage aggregation. Plaintiffs allege that when they signed contracts for cellular telephone service with Verizon, they were not informed that they would be charged for calls rounded up to the next minute or for incoming calls. They also allege that due to Verizon's billing practices, they do not receive their full allotment of airtime minutes.

Based upon the above allegations regarding their service contracts and Verizon's business practices, Plaintiffs initiated this lawsuit in Wayne County Circuit Court. In their Complaint, Plaintiffs allege three substantive counts: violation of the Michigan Consumer Protection Act (Count I), "silent fraud" (Count II), and breach of contract (Count III). Plaintiffs further allege "class action allegations," in which they seek to represent the entire class of current and former Verizon and

---

1. At the time that Plaintiffs entered into their contracts for cellular telephone services, NewPar was doing business in Michigan and Ohio as "AirTouch Cellular". Subsequently, NewPar, and other AirTouch related entities, including Primeco, the limited partnership named by Plaintiffs in their Complaint, via merger and other combinations, came under the umbrella of the "Verizon Wireless" trade name.

2. Similarly, Primeco, the limited partnership named in Plaintiffs' Complaint, is not a Michigan citizen. Primeco's partners are Texas Holdings LLC and TU Acquisition Co., LLC, both of which are limited liability companies whose sole membership is Cellco Partnership, no partners of which are Michigan citizens. *See* Notice of Removal, ¶ 7.

3. Plaintiffs have only provided the Court with a copy of Mr. Gavriles's contract. *See* Exhibit 1 appended to Plaintiffs' Answer to Defendant's Motion to Dismiss Complaint. However, Plaintiffs purport to seek relief in their own behalf and also "as representatives of a class of all those similarly situated." In this regard, Plaintiffs have alleged that each of the class members maintain an individual contract with Defendant for wireless services, and that such individual contracts provide for airtime minutes pursuant to plans that "range anywhere from 100 to 1,500 minute[s]." [*See* Brief in Support of Plaintiffs' Motion to Remand, p. 2.] It is, thus, assumed that Plaintiff Yaldoo's contract provided for a plan within this range.

AirTouch Cellular in Michigan dating back to March 21, 1995. *See* Complaint, ¶ 18.[4]

With respect to the class action allegations, Plaintiffs state that "equitable and declaratory relief would not be appropriate with respect to the class because each member has suffered financial losses." *Id.* ¶ 5. However, Plaintiffs seek class action certification because "[t]he damages suffered by individual Class members are relatively small," and, therefore, they contend that it would be "virtually impossible" for individuals to seek redress through individual litigation. *Id.* at ¶ 30.

Based upon the foregoing allegations, on April 24, 2001, Defendant removed Plaintiffs' action to this Court, alleging diversity jurisdiction pursuant to 28 U.S.C. § 1332. The Court subsequently issued an Order to Show Cause directing Defendant to show cause in writing why this case should not be remanded to state court, noting that because of the "non-aggregation rule," the $75,000.00 amount in controversy requirement might not be satisfied here. The Court's Order to Show Cause apparently crossed in the mail with Plaintiffs' Motion to Remand in which Plaintiffs requested remand based upon the same non-aggregation rule.

## III. *SUMMARY OF THE PARTIES' ARGUMENTS*

Plaintiffs argue that remand is proper because each individual class member's claim is less than the minimum $75,000 threshold for this Court's diversity of citizenship subject matter jurisdiction to attach. Specifically, Plaintiffs argue that neither the claims presented nor the potential attorney's fees can be aggregated by the Defendant to meet this court's minimum amount in controversy requirement.

Verizon counters that the Plaintiffs' claim includes a claim for disgorgement, injunctive relief and attorney's fees. Verizon argues that a disgorgement claim should be treated as multiple claims against an undivided interest, which allow aggregation of the plaintiff's individual claims to meet the minimum claim amount threshold. Verizon further argues that its potential expenses incurred to comply with injunctive relief would satisfy the minimum claim amount threshold. Additionally, Verizon claims that attorneys' fees should be aggregated and allocated pro rata among the two named Plaintiffs only and, therefore, the Court should find the amount in controversy requirement satisfied.

## IV. DISCUSSION

### A. *APPLICABLE STANDARDS*

The standard of review for jurisdictional purposes in removal is summarized as follows:

> The District Court must resolve "all disputed questions of fact and ambiguities in the controlling... state law in favor of the non-removing party." *Id.* [*Alexander v. Electronic Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir.1994) ] All doubts as to the propriety of removal are resolved in favor of remand. *See id.*

*Coyne v. American Tobacco Company*, 183 F.3d 488, 493 (6th Cir.1999). *See also Knauer v. Ohio State Life Ins. Co.*, 102 F.Supp.2d 443, 445 (N.D.Ohio 2000) (court to look to face of complaint to determine if amount in controversy is satisfied). The burden is on the defendant in a removal case to prove that the requirements for diversity jurisdiction have been satisfied. *See Gafford v. General Electric*, 997 F.2d 150, 155 (6th Cir.1993).

---

4. As noted above, AirTouch Cellular is the predecessor-in-interest of Verizon with respect to cellular telephone service in Michigan.

## B. DEFENDANT IS NOT ENTITLED TO AGGREGATION OF DAMAGES FOR PURPOSES OF MEETING THE AMOUNT IN CONTROVERSY REQUIREMENT IN THIS CASE

The seminal case with respect to satisfaction of the amount in controversy requirement in class action cases is *Snyder v. Harris*, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969), in which the Supreme Court granted *certiorari* to review the decisions entered by federal district courts in two separate class actions, *Snyder v. Harris* and *Gas Service Company v. Coburn*. Each of these cases involved a single plaintiff suing on behalf of himself and "all others similarly situated."

In the *Snyder* case, the plaintiff, a corporate shareholder, brought suit in the United States District Court for the Eastern District of Missouri on the basis of diversity of citizenship against members of the company's board of directors alleging that they had sold their shares of the company's stock for an amount far in excess if its fair market value, that this excess represented payment to these directors to obtain complete control of the company, and that under Missouri law, the excess should properly be distributed among all the shareholders of the company, not merely to a few of them. Since the allegations in complaint showed that Snyder sought for herself only $8,740 in damages, the defendants moved to dismiss on the ground that the amount in controversy requirement for diversity jurisdiction was not satisfied.[5] Snyder argued, however, that her claim should be aggregated with those of the other members of her putative class, approximately 4,000 shareholders of the company stock, and if all 4,000 potential claims were aggregated, the amount in controversy would be $1,200,000.00.

The district court rejected Snyder's argument and held that the claims could not be aggregated to meet the statutory requirement for federal jurisdiction and the Eight Circuit Court of Appeals affirmed.

*Coburn* involved an action brought by a resident of Kansas in the federal district court in that state against the Gas Service Company which marketed natural gas in Kansas. The complaint alleged that the Gas Service Company had billed and illegally collected a city franchise tax from the plaintiff and others living outside of cities in the state. Coburn alleged in the complaint damages to himself of only $7.81. Styling his complaint as a class action, however, Coburn sought relief on behalf of 18,000 other Gas Service Company customers living outside of city limits. The amount by which other customers were overcharged was indicated as "unknown," but, in any event, the Complaint alleged that the aggregation of these claims exceeded $10,000, the then existing federal jurisdictional amount.

The Gas Service Company moved to dismiss Coburn's complaint for failure to satisfy the statutory amount in controversy requirement, but the district court denied the motion and the Tenth Circuit Court of Appeals affirmed, holding that because of the 1966 amendment to Rule 23 of the Federal Rules of Civil Procedure relating to class actions, separate and distinct claims brought together in a class action could be aggregated for purposes of establishing the jurisdictional amount in controversy in diversity of citizenship cases.

The Supreme Court held that the court's jurisdiction was not expanded by the 1966 class action rule changes and that each plaintiff's claim would need to satisfy the amount in controversy for the court to

---

**5.** At the time, the jurisdictional amount was $10,000.

have subject matter jurisdiction *Snyder v. Harris,* 394 U.S. at 336, 89 S.Ct. at 1057.

In reaching its conclusion, the *Snyder* Court explained:

> The traditional judicial interpretation under [the diversity of citizenship statute throughout the years] has been from the beginning that the separate and distinct claims of two or more plaintiffs cannot be aggregated in order to satisfy the jurisdictional amount requirement. Aggregation has been permitted only (1) in cases in which a single plaintiff seeks to aggregate two or more of his own claims against a single defendant and (2) in cases in which two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest. . . .

> The doctrine that separate and independent claims could not be aggregated was never, and is not now based upon the categories of old Rule 23 [6] or of any rule of procedure. That doctrine is based rather upon this Court's interpretation of the statutory phrase "matter in controversy." The interpretation of this phrase as precluding aggregation substantially predates the 1938 Federal Rules of Civil Procedure. In 1911, this Court said in *Troy Bank v. G.A. Whitehead & Co.:*

> "When two or more plaintiffs, having separate and distinct demands, unite for convenience and economy in a single suit, it is essential that the demand of each be of the requisite jurisdictional amount* * *." 222 U.S. 39, 40, 32 S.Ct. 9, 56 L.Ed. 81.

By 1916, this Court was able to say in *Pinel v. Pinel,* 240 U.S. 594, 36 S.Ct. 416, 60 L.Ed. 817, that it was "settled doctrine" that separate and distinct claims could not be aggregated to meet the required jurisdictional amount. In *Clark v. Paul Gray, Inc.,* 306 U.S. 583, 59 S.Ct. 744, 83 L.Ed. 1001 (1939), this doctrine, which had first been declared in cases involving joinder of parties, was applied to class actions under the then recently passed Federal Rules. In that case numerous individuals, partnerships, and corporations joined in bringing a suit challenging the validity of a California statute which exacted fees of $15 on each automobile driven in the State. Raising the jurisdictional amount question *sua sponte,* this Court held that the claims of the various fee payers could not be aggregated "where there are numerous plaintiffs having no joint or common interest or title in the subject matter of the suit." Nothing in the amended Rule 23 changes this doctrine. . . .

Any change in the Rules that did purport to effect a change in the definition of "matter in controversy" would clearly conflict with the command of Rule 82

---

**6.** Prior to 1966, Fed. R. Civ. Pro. 23 divided class actions into three categories which came to be known as "true," "hybrid," and "spurious." True class actions were those in which the rights of the different class members were common and undivided; in such cases aggregation was permitted. 394 U.S. at 335, 89 S.Ct. 1053. Spurious class actions, on the other hand, were in essence, merely a form of permissive joinder in which parties with separate and distinct claims were allowed to litigate those claims in a single suit simply because the different claims involved common questions of law or fact. *Id.* In such cases aggregation was not permitted: each plaintiff had to show that his individual claim exceeded the jurisdictional amount. *Id.* The 1966 amendment to Rule 23 replaced the old categories with a functional approach to class actions. *Id.* As it now exists, Rule 23 establishes guidelines for the appropriateness of class actions, makes provisions of giving notice to absent members, allows members of the class to remove themselves from the litigation and provides that the judgment will include all members of the class who have not requested exclusion.

that "(t)hese rules shall not be construed to extend or limit the jurisdiction of the United States district courts..." We have consistently interpreted the jurisdictional statute passed by Congress as not conferring jurisdiction where the required amount in controversy can be reached only by aggregating separate and distinct claims....

394 U.S. at 335–337, 89 S.Ct. 1053.

The *Snyder* Court further noted that to permit aggregation would contravene the congressional purpose in increasing the amount in controversy requirement for diversity jurisdiction:

> To overrule the aggregation doctrine... would run counter to the congressional purpose in steadily increasing through the years the jurisdictional amount requirement. That purpose was to check, to some degree, the rising caseload of the federal courts, especially with regard to the federal courts' diversity of citizenship jurisdiction. Any change in the doctrine of aggregation in class action cases under Rule 23 would inescapably have to be applied as well to the liberal joinder provisions of Rule 20 and to the joinder of claims provisions of Rule 18. The result would be to allow aggregation of practically any claims of any parties that for any reason happen to be brought together in a single action. This would seriously undercut the purpose of the jurisdictional amount requirement. The expansion of the federal caseload could be most noticeable in class actions brought on the basis of diversity of citizenship.... In *Healy v. Ratta*, 292 U.S. 263, 54 S.Ct. 700, 78 L.Ed. 1248 (1934), this Court noted that by successively raising the jurisdictional amount Congress had determined that cases involving lesser amounts should be left to be dealt with by the state courts and said:

> "The policy of the statute calls for its strict construction* * * Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined." 292 U.S. 263, 270, 54 S.Ct. 700, 703, 78 L.Ed. 1248.

> \* \* \* \* \* \*

> ... There is no compelling reason for this Court to overturn a settled interpretation of an important congressional statute in order to add to the burdens of an already overloaded federal court system.

*Id.* at 339–341, 89 S.Ct. 1053.

*Snyder* remains to this day the controlling law with respect to aggregation. *See Zahn v. International Paper Co.*, 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973) (court refused to overrule *Snyder* and affirmed lower court's dismissal of claims of members of a class who could not independently meet the amount in controversy requirement). *See also Sellers v. O'Connell*, 701 F.2d 575 (6th Cir.1983); *Farkas v. Bridgestone/Firestone*, 113 F.Supp.2d 1107 (W.D.Ky.2000). Therefore, pursuant to the rule enunciated by the Court in *Snyder*, aggregation of the class members' damages here will be permitted only if it can be shown that the putative class plaintiffs have "unite[d] to enforce a single title or right in which they have a common and undivided interest."

1. *PLAINTIFFS DO NOT POSSESS A COMMON, UNDIVIDED INTEREST IN THE RELIEF SOUGHT*

In *Sellers v. O'Connell, supra*, the Sixth Circuit delineated the characteristics of a "common, undivided interest" for purposes of aggregating damages of class members in order to satisfy the amount in controversy requirement of diversity jurisdiction.

In *Sellers*, the Court of Appeals affirmed the district court's dismissal of a class action brought by an applicant for pension benefits from the United Mine Workers Welfare and Retirement Fund. Sellers claimed that the Fund's trustees improperly passed a resolution ("Resolution 72") limiting retroactive benefits and as a result, he was damaged in the amount of $9,875 that he allegedly would have been entitled to had the resolution not been adopted. This amount of damages was less than the then existing $10,000 jurisdictional amount in controversy. Sellers argued, however, that since all class plaintiffs would have to demonstrate the invalidity of Resolution 72 to establish their individual claims for retroactive benefits, they should be viewed as having "united to enforce the same right" and accordingly should be entitled to aggregate their claims.

Both the District Court and the Sixth Circuit rejected Sellers' argument. The Court of Appeals explained:

> [Sellers'] reasoning is faulty because the class plaintiffs do not possess a common and undivided interest in the relief sought. An identifying characteristic of a common and undivided interest is that if one plaintiff cannot or does not collect his share, the shares of the remaining plaintiffs are increased. Such is not the situation here because each plaintiff seeks to receive a fixed sum under the terms of the trust agreement. Where a group of plaintiffs litigate individual cash claims the amount of which remain unaffected by the results obtained by fellow plaintiffs, the litigants may not aggregate their claims when alleging jurisdiction.

701 F.2d at 579.

 This is precisely the situation presented in the instant action. The putative class members seek to litigate individual claims. Each class member's damages will be based upon his or her own Verizon contract history. The amount of damages which each class member will be entitled to will be unaffected if one or more of them cannot or does not succeed with his or her claim.

### a. Plaintiffs Have Not Alleged a Claim for Disgorgement or Injunctive Relief

*Disgorgement*

Disgorgement is an equitable remedy to force a defendant to give up the amount equal to the defendant's unjust enrichment. Disgorgement is not intended to compensate the victim of fraud. *Securities and Exchange Commission v. Blavin*, 760 F.2d 706, 713 (6th Cir.1985). A claim for disgorgement, if successful, results in a pool of money available for the plaintiffs. The proceeds from disgorgement are not directly related to each plaintiff's actual damages and would be distributed to plaintiffs who remained a party to the action.

Defendant argues that Plaintiffs have alleged a claim of disgorgement in their Complaint and relies upon the decision of the court in *In re Cardizem CD Antitrust Litigation*, 90 F.Supp.2d 819 (E.D.Mich. 1999) as persuasive authority in support of its argument that a disgorgement claim fits within the parameters set forth by the Sixth Circuit in *Sellers*. In the *Cardizem* case, the court reviewed nine consolidated class action cases in the context of motions to remand. In six of these cases, the court found that the complaints in those cases either specifically alleged claims for disgorgement or alleged claims of unjust enrichment, for which disgorgement is a cognizable remedy. Based upon these specific complaint allegations, the court determined that the plaintiffs had asserted in each of those six cases an "integrated claim" because "the disgorgement remedy would inure to the benefit of the class

rather than vindicate any alleged violations of individual rights." 90 F.Supp.2d at 826–27 *Aetna U.S. Healthcare, Inc. v. Hoechst, et al.,* 48 F.Supp.2d 37, 41 (D.D.C.1999). *See also, Everett v. Verizon Wireless, Inc.,* N.D. Ohio No. 3:00 CV 7763 [Memorandum Opinion attached as Ex. 2 to Defendant's Memorandum in Response to Order to Show Cause] (aggregation of damages based upon disgorgement theory held proper because plaintiffs specifically alleged disgorgement as a remedy in their complaint). *But see, Gilman v. BHC Secs., Inc.,* 104 F.3d 1418, 1426–28 (2nd Cir.1997) and *Aetna U.S. Healthcare, Inc. v. Hoechst Aktiengesellschaft,* 54 F.Supp.2d 1042, 1049–51 (D.Kan.1999) (no exception to non-aggregation rule for disgorgement).

▐ In this case, however, there is no allegation of unjust enrichment or restitu-

tion or disgorgement. Therefore, contrary to Defendant's assertions, this case does not fit within the disgorgement exception provided by the courts in *Cardizem* and *Everett.*[7]

*Injunctive Relief:*

Verizon also argues that, like disgorgement, claims for injunctive relief can constitute an exception to the non-aggregation principle. As the court explained in the *In re Cardizem* case,

[I]n a class action case, "the court must determine the nature of the right that would be protected by an injunction in order to set the appropriate value." *Shelly v. Southern Bell Tel. & Tel. Co., Inc.,* 873 F.Supp. 613, 616 (M.D.Ala. 1995) (citing *Snow v. Ford Motor Co.,* 561 F.2d 787, 790 (9th Cir.1977)). Where the claims of the plaintiff and the

---

7. Defendant's argue that in a "First Amended Complaint" Plaintiffs sought $100,000,000 in damages and that this sum implies that the plaintiffs must be seeking disgorgement because "no individual plaintiff has been damaged in that amount from rounded up and incoming call charges." [Defendant's Memorandum in Response to Order to Show Cause, p. 2.] Defendant's reliance upon the "First Amended Complaint" is wholly misplaced. First of all, the Complaint which Defendant's removal was based upon contains no such allegation of $100,000,000 in damages. In fact, Plaintiffs' Complaint contains no specific dollar amount of damages whatsoever. With a few exceptions not applicable here, it is well-settled that the right of removal is decided by the pleadings, **viewed as of the time when the petition for removal is filed.** *See Albright v. R.J. Reynolds Tobacco Co.,* 531 F.2d 132, 135 (3d Cir.) *cert. denied,* 426 U.S. 907, 96 S.Ct. 2229, 48 L.Ed.2d 832 (1976); *Hood v. Security Bank of Huntington,* 562 F.Supp. 749, 750 (S.D.Ohio 1983). Furthermore, the "First Amended Complaint" which Defendant seeks to rely upon in its Response to the Show Cause Order **has never been filed in this case.** Defendant has appended a purported First Amended Complaint as an exhibit to its Memorandum in Response to Order to Show Cause. It appears that Plaintiffs may

have served Defendant with this pleading **after the case was removed to this Court.** *Compare* date of filing of Notice of Removal (April 24, 2001) and date of First Amended Complaint and proof of service thereof (April 25, 2001). However, the First Amended Complaint was never filed with the Court. Furthermore, once the case was removed to this Court, the Federal Rules of Civil Procedure became applicable to the action. Defendant filed a Motion to Dismiss the removed Complaint within a week of removal. As provided in Fed. R. Civ. Pro. 15, once a responsive pleading—such as a motion to dismiss—has been filed, a complaint may be amended "only by leave of court or by written consent of the adverse party." Leave to amend was never sought nor granted, nor has any notice of consent ever been filed.

However, even if the Court were to accept as having been filed the First Amended Complaint with the prayer for $100,000,000 in damages, it is entirely plausible that there may be one million class members each claiming $100.00 in damages such that their individual claims total $100,000,000. There being no claim of unjust enrichment or disgorgement, Defendant's reliance on this damages demand would still be prohibited as an aggregation of individual damages claims.

class members are separate and distinct, the defendant "is deemed to face multiple claims for injunctive relief, each of which must be separately evaluated." *In re Brand Name Prescription Drugs,* 123 F.3d [599,] 610 [ (7th Cir.1997) ] (citing *Snow v. Ford Motor Co.,* 561 F.2d 787, 790 (9th Cir.1977)). "[E]ach plaintiff's claim must be held separate from each other plaintiff's claim from both the plaintiff's and the defendant's standpoint." On the other hand, where the plaintiff and the class members have a common and undivided interest in the injunctive relief, it is appropriate to aggregate the total cost of the requested injunctive relief from the defendant's view point. *See Earnest v. General Motors Corp.,* 923 F.Supp. 1469, 1472–73 (N.D.Ala.1996) (where the court observed that where the equitable relief sought "would benefit the putative class as a whole and not just any individual plaintiff," then "each plaintiff has a common interest in the injunctive and declaratory relief"); *Hoffman v. Vulcan Materials Co.,* 19 F.Supp.2d 475, 483 (M.D.N.C.1998) (where the court considered the defendant's costs of complying with plaintiff's requested injunctive relief and observed that "because the defendant will sustain this loss even if only one plaintiff were to obtain the injunction, this is a case where plaintiffs have an undivided interest in the injunction.") 90 F.Supp.2d at 835. *See also, Edge v. Blockbuster Video, Inc.,* 10 F.Supp.2d 1248, 1252 (N.D.Ala.1997).

■ Defendant claims that if it is enjoined from "rounding up" and charging for incoming calls, the cost to Verizon will significantly exceed $75,000. However, again Verizon is asking the Court to rewrite the Plaintiffs' Complaint.

It is well-settled that injunctive relief is only appropriate where an award of damages would be inadequate. *See* 11A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure,* § 2948 (injunctive relief will usually be denied if it appears that the applicant has an adequate alternate remedy in the form of money damages or other relief). In fact, Plaintiffs here have specifically acknowledged that their remedy at law will be adequate and have specifically excluded equitable relief—which is what injunctive relief is—in the Complaint. *See* Complaint ¶ 25 ("[E]quitable or declaratory relief would not be appropriate with respect to the class because each member has suffered financial losses.")

Verizon argues that the Michigan Consumer Protection Act, M.C.L. § 455.911, allows injunctive relief and Verizon makes conclusory statements that since an injunctive remedy is available under the Act, the Plaintiffs' Complaint inherently must include a claim for such relief. While the Consumer Protection Act permits injunctive relief, it is not mandatory. Verizon cannot rewrite the Plaintiffs' complaint using conclusory statements regarding the Plaintiffs' claim that create a plea for injunctive relief.

2. *ATTORNEYS FEES MUST BE ALLOCATED PRO RATA AMONG ALL CLASS MEMBERS, NOT ONLY AMONG THE TWO NAMED PLAINTIFFS*

Defendants also contend that the jurisdictional amount is met for yet another reason—their recovery of statutory attorneys' fees. Defendants assert that Plaintiffs have retained two law firms to represent them and that the fees that Plaintiffs will incur "more likely than not" will exceed the sum of $75,000, if aggregated, and "more likely than not" will exceed $150,000 if not aggregated and allocated pro rata among the two named Plaintiffs.

██ In diversity cases such as this one, courts look to state law to determine the nature and amount of recoverable damages. *See Horton v. Liberty Mutual Ins. Co.*, 367 U.S. 348, 352–53, 81 S.Ct. 1570, 6 L.Ed.2d 890 (1961). If state law provides for the recovery of attorneys' fees, the court should consider them in determining whether the jurisdictional amount in controversy is met. *Clark v. National Travelers Life Ins. Co.*, 518 F.2d 1167, 1168 (6th Cir.1975).

Defendants contend that the Michigan Consumer Protection Act provides for the Plaintiffs' recovery of statutory attorneys' fees. M.C.L. § 445.911(2) provides:

> *Except in a class action,* a person who suffers loss as a result of a violation of this act may bring an action to recover actual damages or $250.00, whichever is greater, *together with reasonable attorneys' fees.*

M.C.L. § 445.911(2) (emphasis added).

██ As indicated in the quoted portion of the Consumer Protection Act, the statute on its face excludes attorneys' fees in class actions. Defendant, however, asks this Court to read the statute as allowing attorneys fees until a class is actually certified.[8] Since the Court has yet to certify a class action, Defendant argues that the Court should consider attorneys' fees in deciding whether the jurisdictional amount is met. Defendant has cited no authority for its interpretation of the Michigan statute and the Court finds no merit in it. The plain language of the statute speaks for itself: the damages and attorneys' fees provision does not apply to class actions.[9]

Furthermore, even assuming *arguendo* that attorneys' fees are recoverable under the Michigan Act, the Court finds persuasive the *In re Cardizem* decision with regard to aggregation and apportionment of attorneys' fees. *In re Cardizem* holds that attorneys' fees should be allocated to each class member, for jurisdictional purposes, his or her individual and pro rata share as a class member of the total attorneys' fees. 90 F.Supp.2d at 834. Accordingly, to satisfy its burden here, Defendant must show, by a preponderance of the evidence, that the attorneys' fees will exceed $75,000 per class member. *Id.*

As Judge Edmunds observed, there is a split of authority on the issue of whether attorneys' fees may be aggregated. Some courts allow aggregation by applying the Eleventh Circuit's analysis in *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353 (11th Cir.1996) (applying Alabama law), which permits the aggregation of state law claims for punitive damages when there is a recognized broad societal purpose served by such an award. *See Howard v. Globe Life Ins. Co.*, 973 F.Supp. 1412, 1419–20 (N.D.Fla.1996); *In re Abbott Labs.*, 51 F.3d 524, 526 (5th Cir.1995) (where the court observed that the Louisiana statutes at issue attributed all of a class's attorneys' fees to the named plaintiffs, thus allowing aggregation and satisfaction of the amount-in-controversy requirement for diversity jurisdiction). Other courts do not allow aggregation of attorneys' fees and hold instead that the fees must be pro rated across the plaintiff class because the underlying claims are separate and dis-

---

8. Defendant acknowledges that once a class is certified, attorneys' fees are no longer recoverable under the Act.

9. Furthermore, Defendant is the party that asked the Court to postpone any decision on class certification. [*See* Defendant's June 12, 2001 Motion to Postpone Briefing on Plain-

tiffs' Class Certification Motion.] Defendant now wants to take advantage of the delay it sought and obtained to argue its entitlement to having the recoverability of attorneys' fees under the Michigan Consumer Protection Act considered in satisfying the jurisdictional amount.

tinct. *See Goldberg v. CPC Int'l, Inc.,* 678 F.2d 1365, 1367 (9th Cir.1982); *Lauchheimer v. Gulf Oil,* 6 F Supp.2d 339, 345–346 (D.N.J.1998); *Crosby v. America Online, Inc.,* 967 F.Supp. 257, 261–62 (N.D.Ohio 1997).

Judge Edmunds found "the better approach to be that which 'decline[s] to treat prospective attorneys' fees in class actions as a bootstrap for establishing federal jurisdiction.'" 90 F.Supp.2d at 834 (quoting *Colon v. Rent–A–Center, Inc.,* 13 F.Supp.2d 553, 562 (S.D.N.Y.1998)). This Court agrees with Judge Edmunds. To allow the aggregation and allocation of attorneys fees suggested by Defendant would permit Defendant to bootstrap the fees claim to satisfy the jurisdictional requirement. Such bootstrapping is not to be condoned.

Defendant has made no showing whatsoever that the attorneys' fees will exceed $75,000 per class member. Therefore, it has failed to establish that the jurisdictional amount-in-controversy is satisfied.

### CONCLUSION

For all of the foregoing reasons,

IT IS HEREBY ORDERED that Plaintiffs' Motion to Remand be, and hereby is, GRANTED. Accordingly,

IT IS FURTHER ORDERED that this case be REMANDED to the Wayne County Circuit Court.