**STROMBERG METAL WORKS, INC., and Comfort Control, Inc., Plaintiffs–Appellants,**

v.

**PRESS MECHANICAL, INC., et al., Defendants–Appellees.**

No. 95–2760.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 8, 1996.

Decided Feb. 20, 1996.

Vincent Borst (argued), Alex Darcy, Askounis and Borst, Chicago, IL, for Stromberg Metal Works, Incorporated, Comfort Control, Incorporated.

Robert R. Stauffer (argued), Jenner & Block, Chicago, IL, for Lester H. Goldwyn, John P. Goldwyn.

Alisa B. Arnoff, Bruce C. Scalambrino, Scalambrino & Arnoff, Chicago, IL, for George E. Zielinski.

Before EASTERBROOK, ROVNER, and EVANS, Circuit Judges.

EASTERBROOK, Circuit Judge.

Bechtel Power Corporation is the owner's contracting agent for the Calvert Cliffs nuclear power station under construction in Lusby, Maryland. Bechtel hired Press Mechanical to work on the heating, ventilation, and air conditioning system of the power station's diesel generator building. The contract between Bechtel and Press calls for the application of Maryland law and requires Press to "bind every subcontractor to ... the terms of the construction documents as far as applicable to the work performed by the subcontractor". Press engaged Stromberg Metal Works and Comfort Control to do some of the HVAC work required by the Bechtel–Press contract. Press issued purchase orders, which provide on the front that the work is to be done "in strict accordance with the plans, specifications and other contract documents listed below"—which include

the master contract that selects Maryland law. Preprinted on the back of each purchase order is this sentence: "This order shall be governed by the laws of the State of Illinois."

The contract between Press and Bechtel provides that Bechtel will pay Press for work done by a subcontractor only if Press certifies that the subcontractor has been paid, or that a bond secures payment. The project's owner needs clean title, which means that Bechtel or the owner may have to pay the subcontractor directly if necessary to clear a mechanic's or materialman's lien. No one wants to pay twice for the same work. Hence the requirement that Press pay the subcontractor before Bechtel will pay Press. According to the complaint, whose allegations we must accept, Press represented to Bechtel that it had paid more than $425,000 to Stromberg, and more than $27,000 to Comfort Control, for their work under the subcontracts. Bechtel then reimbursed Press. But the representation was false; Press had paid only $18,000 to Stromberg and nothing to Comfort Control. Press is insolvent and has made an assignment for the benefit of its creditors. Apparently Stromberg and Comfort Control do not have liens on their work (the reason for this is not clear, but we need not pursue the question). Having paid Press, Bechtel is unwilling to pay the subcontractors directly, and Press cannot. Stromberg and Comfort Control filed this action under the diversity jurisdiction seeking to collect from Lester H. Goldwyn, John P. Goldwyn, and George E. Zielinski, who it believes controlled Press and were responsible for the false certification to Bechtel and the non-payment of the debts on the subcontracts. They invoke the Maryland Construction Trust Fund Statute. One clause of this law, Md. Real Property Code § 9–201(b)(1), provides that funds received by a contractor "for work done or materials furnished ... for or about a building by any subcontractor" are held in trust for the subcontractor, and § 9–202 adds:

> Any officer, director, or managing agent of any contractor or subcontractor, who knowingly retains or uses the moneys held in trust under § 9–201 of this subtitle, or any part thereof, for any purpose other

than to pay those subcontractors for whom the moneys are held in trust, shall be personally liable to any person damaged by the action.

Illinois law lacks any comparable provision, so plaintiffs' case depends on the application of Maryland law. Zielinski and the Goldwyns believe that they have defenses even if Maryland law applies, but we need not decide whether that is so. Similarly, we sidestep the question whether the current version of the Maryland law (which we have quoted) differs materially from the version in force when Press failed to pay Stromberg and Comfort Control.

## I

■ Stromberg's claim exceeds $50,000, but Comfort Control's claim does not, so the immediate question is: does the supplemental jurisdiction permit a court to hear a claim by a party whose loss does not meet the jurisdictional minimum? In *Clark v. Paul Gray, Inc.*, 306 U.S. 583, 59 S.Ct. 744, 83 L.Ed. 1001 (1939), the Supreme Court held not, but 28 U.S.C. § 1367, enacted in 1990, may have altered that result. One court of appeals has held that § 1367 supersedes *Clark* and allows pendent-party jurisdiction when the additional parties have claims worth less than $50,000. *In re Abbott Laboratories*, 51 F.3d 524, 527–29 (5th Cir.1995). (Actually, the fifth circuit held that § 1367 alters the result of *Zahn v. International Paper Co.*, 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973); we discuss below whether there is a material difference between *Clark* and *Zahn*.) No other court of appeals has addressed this question; we recently remarked on its unsettled nature. *Anthony v. Security Pacific Financial Services, Inc.*, 75 F.3d 311, 315–16 & n. 2 (7th Cir.1996). Most district judges, within and without this circuit, have held that the old rule retains vitality. The district court in this case followed the majority view and dismissed Comfort Control's claim for want of jurisdiction. But we are reluctant to create a conflict among the circuits on a jurisdictional issue. We follow *Abbott Laboratories*, which has strong support from the statutory text.

Section 1367(a) provides that "district courts shall have supplemental jurisdiction over *all* other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." (Italics added.) To emphasize the inclusiveness of "all", the section continues: "Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties." *Abbott Laboratories* observed that this language is direct and unambiguous. We held in *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176 (7th Cir.1993), that § 1367(a) permits the adjudication of a claim by a pendent party that neither arises under federal law nor is supported by diversity of citizenship. If § 1367(a) allows suit by a pendent plaintiff who meets the jurisdictional amount but not the diversity requirement, it also allows suit by a pendent plaintiff who satisfies the diversity requirement but not the jurisdictional amount.

■ Although the final sentence of § 1367(a) might have been designed to do nothing more than reverse the outcome of *Finley v. United States*, 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989), which held that pendent-party jurisdiction is unavailable when the principal claim arises under federal law, the text is not limited to federal-question cases, and § 1367(b) shows that the statute governs diversity litigation as well. Section 1367(b) begins: "In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction" in defined circumstances. So although, as *Abbott Laboratories* discussed, some legislative history suggests that the responsible committees did not expect § 1367 to upset *Zahn*, the text is not limited in this way. When text and legislative history disagree, the text controls. *In re Sinclair*, 870 F.2d 1340 (7th Cir.1989).

The Goldwyns ask us to distinguish *Abbott Laboratories* on the ground that it, like *Zahn*, involved a class action. *Zahn* held that every member of a class must satisfy the jurisdictional minimum, and *Abbott Laboratories* concluded that under § 1367 only the named class representatives need do so. Our case, by contrast, has just two plaintiffs. But § 1367 does not distinguish class actions from other cases; neither did *Zahn*. Indeed, the point of *Zahn* was that the class device made no difference. *Snyder v. Harris*, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969), held that Fed.R.Civ.P. 23 does not alter the rule that multiple persons' claims cannot be combined to reach the minimum amount in controversy. Then *Zahn* added that each unnamed class member must satisfy the jurisdictional amount even if the class representatives do so without aggregation. The Court started from the proposition, established in *Clark*, that § 1332 applies to each party independently. See also *Scott v. Frazier*, 253 U.S. 243, 40 S.Ct. 503, 64 L.Ed. 883 (1920). *Zahn* holds that the unnamed class members remain "parties" for this purpose. In modern terms, this means that Rule 23 does not authorize pendent-party jurisdiction. See also Fed.R.Civ.P. 82 ("[t]hese rules shall not be construed to extend or limit the jurisdiction of the United States district courts"). *Zahn* added only that the status of the pendent parties as class members (rather than as named representatives) does not make a difference. Section 1367(a) has changed the basic rule by authorizing pendent-party jurisdiction, and that change affects *Clark* and *Zahn* equally. To the extent practical considerations enter in, it is hard to avoid remarking that allowing thousands of small claims into federal court via the class device is a substantially greater expansion of jurisdiction than is allowing a single pendent party. It is therefore easy to imagine wanting to overturn *Clark* but not *Zahn*; it is much harder to imagine wanting to overturn *Zahn* but not *Clark*, and we have no reason to believe that Congress harbored such a secret desire.

Section 1367(b) specifies exceptions to § 1367(a) for diversity cases. It forbids the exercise of supplemental jurisdiction in diversity litigation

over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such

rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

Thus plaintiffs joined under Fed.R.Civ.P. 19, or intervening under Fed.R.Civ.P. 24, must satisfy the requirements of § 1332. Comfort Control is not an intervenor, and it does not come under Rule 19 either. That rule calls for the joinder of necessary parties. Comfort Control is not an indispensable party to litigation by Stromberg, or the reverse; joinder is strictly for convenience, and is authorized by Fed.R.Civ.P. 20. Now this does point up an apparent incongruity in § 1367(b). Claims *against* persons made parties under Rule 20 are forbidden, but claims *by* parties who join under Rule 20 are allowed. Similarly, claims by parties joined under Rule 19 because they are essential to adjudication are forbidden (if that spoils diversity), but *claims by parties joined under Rule 20 for convenience are allowed*. What sense can this make? Some scholars have suggested that it makes none, and they call on courts to fix the statute by inventive construction. E.g., Thomas D. Rowe, Jr., Stephen B. Burbank & Thomas M. Mengler, *Compounding or Creating Confusion About Supplemental Jurisdiction? A Reply to Professor Freer*, 40 Emory L.J. 943, 961 n. 91 (1991). Whether § 1367(b) is a model drafting exercise may be doubted, but the language draws an important line. The complete-diversity rule of *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806), excludes from federal court cases in which citizens of the same state are on each side. Supplemental jurisdiction has the potential to move from complete to minimal diversity. Suppose a citizen of Illinois sues a citizen of Indiana under § 1332 and adds a citizen of Illinois as a supplemental defendant. If this strategy works, then *Strawbridge* is no longer controlling. Similarly, suppose two parties (one from Illinois, one from Indiana) who claim an interest in the same property want to adjudicate their rights against a third party, a citizen of Illinois. Without a provision like § 1367(b), it would be easy for the Indiana claimant to start the suit, leading the defendant to add the Illinois claimant under Rule 19. As written, § 1367(b) keeps cases of this kind out of federal court entirely, just as *Strawbridge* does. See also *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978). But if it is possible for the principal action to be in federal court without any jurisdictional qualms then § 1367(b) does not block adding an additional plaintiff with a closely related claim against the defendants who are already in the federal forum.

■ "Closely related" is a vital qualification. Section 1367(c)(2) provides that the district court may dismiss a supplemental claim that "substantially predominates over the claim or claims over which the district court has original jurisdiction". And § 1367(a) itself applies only if the supplemental claims are "so related to claims in the action within [the] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." The claims of Stromberg and Comfort Control satisfy these requirements, however. The two plaintiffs are affiliated corporations under common control. The claims arose out of the same construction project. According to the complaint, the defendants pursued a single course of action—fraudulently representing to Bechtel that the subcontractors had been paid, and thus obtaining money intended for the subcontractors without remitting it—that injured both plaintiffs. The same form of purchase order was used for both subcontracts, so factual and legal issues are identical. This strikes us as exactly the sort of case in which pendent-party jurisdiction is appropriate. It is two for the price of one: to decide either plaintiff's claim is to decide both, and neither private interests nor judicial economy would be promoted by resolving Stromberg's claim in federal court while trundling Comfort Control off to state court to get a second opinion. These plaintiffs' claims are more closely related than the claims in *Brazinski*, where the pendent plaintiff ultimately lost on legal and factual grounds that were specific to the pendent claim. If *Brazinski* was within the supplemental jurisdiction, this case is too. See also, e.g., *Baer v. First Options of Chicago, Inc.*, 72 F.3d 1294, 1298–1301 (7th

Cir.1995); *Myers v. County of Lake,* 30 F.3d 847 (7th Cir.1994).

## II

Stromberg lost on the merits in the district court because the judge thought that Stromberg had assented to the application of Illinois law. Press is an Illinois corporation with its principal place of business in Illinois; Stromberg and Comfort Control are Maryland corporations; Stromberg's place of business is Washington, D.C., and Comfort Control's is in Maryland. The subcontracts had enough of a link to Illinois that an Illinois court would permit the parties to select Illinois law. See *Hofeld v. Nationwide Life Insurance Co.,* 59 Ill.2d 522, 322 N.E.2d 454 (1975). (Because the district court is in Illinois, that state's choice-of-law rules apply. *Klaxon Co. v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).) "The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue." *Restatement (2d) of Conflict of Laws* § 187(1) (1971). Maryland does not insist that its Construction Trust Fund Statute be applied to all work performed in that state; the statute does not include a rule forbidding waivers. Because plaintiffs could have agreed by contract to surrender their rights under that law, they were free to accomplish the same thing by choosing Illinois law in gross. The parties dispute whether and how Illinois would apply § 187(2) of the *Restatement,* which deals with what happens "if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue". Because individual liability could be created or avoided by contract, Illinois would stop with the approach of § 187(1).

All questions of contract to one side, Illinois law is presumptively applicable because plaintiffs want to hold corporate officers liable for corporate acts. Efforts to "pierce the corporate veil" are governed by the law of the state of incorporation, see *Kern v. Chicago & Eastern Illinois R.R.,* 6 Ill.App.3d 247, 250–51, 285 N.E.2d 501, 503–04 (1st Dist.1972), which for Press is Illinois. So unless the parties agreed to the application of Maryland law, it is not necessary to turn over the purchase order and read the choice-of-law clause on the reverse. By "the parties" we mean the persons sought to be held liable. Even the strongest language choosing Maryland law for purposes of interpreting the subcontracts would not necessarily bind Zielinski and the Goldwyns for purposes of personal liability—*they* did not sign the contracts. Corporate officers' decisions may be imputed to the corporation; things do not work the other way 'round. *Citizens Electric Corp. v. Bituminous Fire & Marine Insurance Co.,* 68 F.3d 1016, 1021–22 (7th Cir.1995); *Mark I, Inc. v. Gruber,* 38 F.3d 369 (7th Cir.1994); *In re Kubly,* 818 F.2d 643 (7th Cir.1987). Plaintiffs therefore need to prevail on two sequential questions: first, they must establish that the subcontracts bind Press to Maryland law; second, they must show that Press's officers have made the same choice for their personal liability. The first hurdle is insuperable, so we need not discuss the second.

One way to establish that Maryland law applies would be to show that subcontractors are third-party beneficiaries of the rules Bechtel established for the project—rules that appear in the Bechtel–Press contract. See E. Allan Farnsworth, 3 *Farnsworth on Contracts* § 10.4 (1990). Owners and their agents have powerful reasons to want all work on a project done according to one set of laws. For example, the owner must decide whether to require contractors to post bonds securing payment of subcontractors. The decision whether to require such a bond could be influenced by the existence of a law such as Maryland's Construction Trust Fund Statute. When corporate managers have more incentive to pay their subcontractors (as they do under Maryland law, to avoid personal liability), there is less need for bonds. Then, too, the price of the Bechtel–Press contract may well have depended on assumptions about liability for defects (which depends on state law), on the likelihood that the contractor could excuse noncompliance with the contract (state law,

again), and so on. The last thing Bechtel wanted to hear from Press was a claim that it could not complete the work on time because some peculiarity of Illinois law entitled one of the subcontractors to delay performance. Press promised Bechtel that it would bind all of its subcontractors to the requirements of the main contract, and one function of such a clause may be to give subcontractors the right to enforce the terms of the main contract *against* Press when the contract and subcontract differ. Curiously, however, Stromberg and Comfort Control do not contend that they are third-party beneficiaries of the Bechtel–Press contract. Nor do they contend that the Bechtel–Press contract estops Press to claim the benefits of Illinois law, to the extent it differs from the rules of Maryland law. In civil litigation courts confine themselves to the arguments advanced by the parties—here, that the subcontract itself selects Maryland law, and that when preprinted and individually negotiated terms conflict the negotiated terms prevail. The latter proposition is sound, 2 *Farnsworth on Contracts* § 7.11 at 264, but the former is not.

■ Negotiated language on the front of each purchase order reads:

> Seller shall furnish and install all duct work, hangers, HVAC, equipment and appurtenances and install all owner-furnished equipment in strict accordance with the plans, specifications and other contract documents listed below, as well as Bechtel procurement specification DG–80491, Bechtel design specification SP–782 and all shop drawings prepared by buyer. All work to be performed under the direct supervision and control of buyer's project manager, project superintendent (or their designee) and shall adhere to all project requirements, including, but not limited to, Buyer's Quality Assurance Safety and Fitness for Duty programs.

Plaintiffs emphasize the words "other contract documents" and "all project requirements", but the context in which these words appear establishes that they refer to the technical requirements of the work. Stromberg and Comfort Control agreed to do exactly what Press had promised Bechtel it

would do. A more backhanded way of selecting Maryland law would be difficult to imagine. True, the Bechtel documents include that provision, but they are crammed with other requirements that are not plausible candidates for imputing to the subcontract. Reading the language typed on the purchase orders as limited to the nature of the work the subcontractors agreed to do makes so much more sense than reading it as incorporating the whole Bechtel–Press contract that the judge was entitled to dismiss the complaint under Fed.R.Civ.P. 12(b)(6). Plaintiffs do not want to offer any additional facts (the subcontracts include integration clauses) and do not argue that this issue is one for a jury to decide. All they have is the bald language, and it is not enough.

The judgment with respect to Stromberg is affirmed. The judgment dismissing Comfort Control as a plaintiff is vacated, and the case is remanded with instructions to enter judgment on the merits.