Michael POORE & Bruce Bias, Individually and On Behalf of All Others Similarly Situated, Plaintiffs,

v.

AMERICAN–AMICABLE LIFE INSURANCE CO. OF TEXAS, Defendant.

No. CV 498–259.

United States District Court, S.D. Georgia, Savannah Division.

Dec. 20, 2000.

John E. Suthers, John E. Suthers, PC, Savannah, GA, for Plaintiffs.

Lewis E. Hassett, Morris, Manning & Martin, LLP, Atlanta, GA, Thomas William Tucker, Dye, Tucker, Everitt, Long & Brewton, PC, Augusta, GA, Sharon Mollman Elliott, Gordon Davenport, III, Foley & Lardner, Madison, WI, for Defendants.

## *ORDER*

NANGLE, District Judge.

On September 6, 2000, this Court ordered the parties in this case to brief the issue of whether this Court had subject matter jurisdiction at the time of removal. Order dated September 6, 2000. (Doc. 28). After carefully reviewing the parties responses (Docs. 29, 31, 36, 37, and 38), all relevant case law and scholarship on this issue, this Court concludes that it had subject matter jurisdiction at the time of removal. Therefore, this Court's remand order dated July 21, 1999 (Doc. 24) is rescinded and this matter shall proceed in this Court.

## I. BACKGROUND

The above-captioned case involves an obvious example of forum shopping on behalf of the plaintiffs. The plaintiffs filed this case in Liberty County Superior Court on October 19, 1998. Def.'s Notice Removal, Ex. A., Compl. at 1 (Doc. 1). The suit is a purported nationwide class action concerning defendant's allegedly fraudulent scheme of selling and marketing life insurance policies with annuity riders. Specifically, plaintiffs allege that defendant made these sales without disclosing the true na-

ture of the products or the risks associated with them. Mem. Law Supp. Pls.' Mot. Remand at 1. (Doc. 14). Plaintiffs requested compensatory and punitive damages, rescission of the policies, restitution, and injunctive relief in their original complaint, but asserted that this relief would amount to less than $75,000 per class member. Def.'s Notice Removal, Ex. A., Compl. at 2.

Defendant filed its notice of removal on November 12, 1998, alleging diversity jurisdiction as the basis of removal. *Id.* at 3. On November 25, 1998, plaintiffs filed a motion for leave to amend their complaint, which this Court granted on December 7, 1998. Order dated December 7, 1998 (Doc. 11). Clearly in an attempt to avoid litigating this case in federal court, the plaintiffs dropped the claims for punitive damages and injunctive relief in the amended complaint. Am. Class Action Compl. at 15. (Doc. 12). On December 15, 1998, the plaintiffs moved to remand this action to Georgia state court. Pls.' Mot. Remand. (Doc. 13). This Court granted that motion and ordered the case remanded to state court on July 21, 1999. Order dated July 21, 1999 (Doc. 24).

Defendants appealed the remand order to the United States Court of Appeals for the Eleventh Circuit. On July 20, 2000, the Eleventh Circuit held that subject matter jurisdiction is to be determined as of the time of removal and remanded the case to this Court to determine "whether [this Court] had subject matter jurisdiction at the time of removal." *Poore v. American–Amicable Life Ins. Co. of Tex.*, 218 F.3d 1287, 1292 (11th Cir.2000).

## II. ARGUMENTS

28 U.S.C. § 1332(a) provides that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—(1) citizens of different States ...." Plaintiffs are citizens of Georgia and defendant is a citizen of Texas and thus, the parties are completely diverse. Def.'s Notice of Removal at 2; Compl. at 2–3. At issue, however, is whether or not the amount in controversy exceeds $75,000, exclusive of interest and costs.

Plaintiffs contend that this Court lacked subject matter jurisdiction at the time of removal because no plaintiff alleges damages in excess of $75,000, exclusive of costs and interests. Pls.' Mem. Law Regarding Subject Matter Jurisdiction at 3–10 (Doc. 29). Therefore, according to plaintiffs' argument, no plaintiff meets the amount in controversy requirement of diversity jurisdiction, 28 U.S.C. § 1332, and so the entire case should be remanded to state court.

Defendants assert that at least the named plaintiff Bias meets the amount in controversy requirement necessary for this Court to have subject matter jurisdiction. Def.'s Mem. Law Regarding Subject Matter Jurisdiction at 3–9 (Doc. 31). Defendant further contends that the Court may exercise supplemental jurisdiction over the remaining class members who do not meet the amount in controversy requirement and adjudicate the entire case. *Id.* at 9–12.

The question presented is one of first impression in this Circuit and requires this Court to decide whether the Judicial Improvements Act of 1990, Pub.L. 101–650, Title III, § 310(a), 104 Stat. 5113 (codified as 28 U.S.C. § 1367), legislatively overrules the Supreme Court's holding in *Zahn v. International Paper Co.*, 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973).[1] The

---

1. The Eleventh Circuit has not addressed this issue. In *Morrison v. Allstate Indem. Corp.*, 228 F.3d 1255, 1269–71 (11th Cir.2000), the court remanded the case to the district court to determine if one class member's claims exceed $75,000. *Id.* at 1269. The court stated that if "there are such class members, we must then decide whether 28 U.S.C. § 1367 statutorily overruled the Supreme Court's decision in *Zahn* to extend a federal court's supplemental jurisdiction over the claims of the entire class when at least one class member has a claim which satisfied the jurisdictional amount in controversy requirement." *Id.*

Court concludes that it does. By resolving this issue, the Court hopes to avoid the "most wasteful type of litigation—fights over jurisdiction." Thomas C. Arthur and Richard D. Freer, *Close Enough for Government Work: What Happens When Congress Doesn't Do Its Job*, 40 EMORY L.J. 1007, 1007 (1991).[2]

## III. ANALYSIS

### A. Diversity Jurisdiction in Class Actions

The Supreme Court has sent conflicting signals regarding invocation of diversity of citizenship jurisdiction in a class action. In *Supreme Tribe of Ben–Hur v. Cauble*, the Supreme Court held that the citizenship of the representative and not the class members is the only relevant citizenship for determining diversity. 255 U.S. 356, 365–67, 41 S.Ct. 338, 65 L.Ed. 673 (1921). In *Zahn v. International Paper Co.*, however, the Supreme Court held that every member of the class must satisfy the amount in controversy requirement in a diversity case. 414 U.S. at 301, 94 S.Ct. 505.

Thus, prior to the amendment of the supplemental jurisdiction statute, 28 U.S.C. § 1367, in 1990, the law of diversity jurisdiction in class actions suggested that the first prong of diversity jurisdiction—complete diversity of citizenship—was not necessary for every class member, but the second prong—the amount in controversy requirement—was necessary for every class member.

In 1990, Congress enacted § 1367, which provides:

(a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

(b) In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367.

The structure of § 1367 is straight-forward: § 1367(a) gives the courts supplemental jurisdiction over transactionally-related claims and § 1367(b) creates certain exceptions to the exercise of supplemental jurisdiction when the district court's original jurisdiction is based solely on diversity

---

**2.** The scholarship on this issue is legion. While by no means exhaustive, the following two publications provide a summary of the scholarship in this area: Volume 74 of the Indiana Law Journal, a symposium entitled "A Reappraisal of the Supplemental–Jurisdiction Statute: § Title 28 U.S.C. 1367," and Volume 41 of the Emory Law Journal entitled "Colloquy: Perspectives on Supplemental Jurisdiction."

of citizenship. Significantly, class actions are not among the exceptions listed in § 1367(b).

Judges and scholars agree that this statute, on its face, overrules *Zahn* because nowhere in the list of prohibited claims does § 1367(b) refer to class actions.[3] Two commentators even went so far as to call the statute "particularly section 1367(b) ... a nightmare of draftsmanship." Arthur and Freer, 40 EMORY L.J. at 1007. Curiously, the legislative history of the statute addressed the question directly and indicated that the statute was "not intended to affect the jurisdictional requirements of 28 U.S.C. § 1332 in diversity-only class actions" and apparently embraced the continued vitality of *Zahn.* H.R.Rep. No. 101–734, at 29 (1990), *reprinted in* 1990 U.S.C.C.A.N. 6860, 6875 & n. 17.[4] In this unusual situation where the plain language of the statute directly contradicts Congress's evident intent, perhaps it is not surprising that courts have not reached a consensus.

### B. Circuit Court Cases Holding That § 1367 Overrules *Zahn*

*In re Abbott Laboratories,* 51 F.3d 524 (5th Cir.1995), *aff'd by an equally divided court,* 529 U.S. 333, 120 S.Ct. 1578, 146 L.Ed.2d 306 (2000) was the first case to address this issue at the appellate level. After reviewing both the language of the statute and its legislative history and noting that the omission of class actions from the exceptions delineated in § 1367(b) "may have been a clerical error," Judge Anderson, writing for the Fifth Circuit, stated that "the statute is the sole repository of congressional intent where the stat-

ute is clear and does not demand an absurd result." *Id.* at 529. Concluding that the individual claims of the class representatives met the requisite jurisdictional amount, the *Abbott* court held that § 1367 allows a district court to exercise supplemental jurisdiction over the other class members whose claims did not meet the amount in controversy requirement. *Id.* The court went on to state that the district court "abused its discretion ... in declining supplemental jurisdiction" over the class members whose claim did not meet the amount in controversy requirement. *Id.* at 530.

The Seventh Circuit was the next Court of Appeals to address the issue in *Stromberg Metal Works, Inc. v. Press Mechanical, Inc.,* 77 F.3d 928, 930–33 (7th Cir. 1996). In *Stromberg,* two affiliated corporations sued the same defendant for claims arising from the same construction project. *Id.* at 932. One plaintiff satisfied the amount in controversy requirement and the other did not. *Id.* at 930. The question presented was whether the supplemental jurisdiction statute permitted a court to hear a claim by a party whose loss did not meet the jurisdictional minimum. *Id.* Based on the statutory text of § 1367, Judge Easterbrook writing for the majority decided to follow *Abbott* and stated that because the factual and legal issues were identical, the case was:

> exactly the sort of case in which [supplemental] jurisdiction is appropriate. It is two for the price of one: to decide either plaintiff's claim is to decide both, and neither private interests nor judicial economy would be promoted by resolv-

3. *See, e.g.,* 1 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE, ¶ 0.97[5], at 928 (2d ed.1994); 2 HERBERT B. NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS, § 6.11, at 6–48 (3d ed.1992); Richard D. Freer, *Toward a Principled Statutory Approach to Supplemental Jurisdiction in Diversity of Citizenship Cases,* 74 IND. L.J. 5, 18 (1998).

4. For a general view of the Judiciary's stance on this issue, *see Report of the Federal Courts Study Committee* 47 (Apr. 2, 1990) (predating

§ 1367 and indicating a clear intention to overrule *Zahn.*). *See also Report of the Subcommittee on the Federal Courts and Their Relation to the States,* 547 (Mar. 12, 1990), *reprinted in Federal Courts Study Committee, Working Papers and Subcommittee Reports,* pt. III, at 561 n. 33 (July 1, 1990) (stating that the "proposal [§ 1367] would overrule the Supreme Court's decision in *Zahn v. International Paper Co.* From a policy standpoint [*Zahn* ] makes little sense and we recommend that Congress overrule it").

ing [one plaintiff's] claim in federal court while trundling [the other plaintiff] off to state court to get a second opinion.

*Id.* at 932. *See also In re Brand Name Prescription Drugs Antitrust Litigation,* 123 F.3d 599, 607 (7th Cir.1997) (stating that if at least one named plaintiff satisfies the jurisdictional minimum, then "the other named plaintiffs and the unnamed class members can, by virtue of the supplemental jurisdiction conferred on the federal district courts by 28 U.S.C. § 1367, piggyback on that plaintiff's claim" (Posner, J.)).

### C. Circuit Court Cases holding that § 1367 did not overrule *Zahn*

Two Circuit Courts of Appeals, however, have declined to follow *Abbott.* In *Leonhardt v. Western Sugar Co.,* 160 F.3d 631 (10th Cir.1998), the Tenth Circuit asserted that the supplemental jurisdiction statute, 28 U.S.C. § 1367, was ambiguous because several district courts had reached different conclusions than the Fifth and Seventh Circuit Courts of Appeals. *Id.* at 639 n. 5. This ambiguity allowed the Tenth Circuit to examine the statute's legislative history. *Id.* at 640. The court then concluded that "the enactment of § 1367 did not overrule *Zahn*'s holding that each plaintiff in a diversity-based class action must meet the jurisdictional amount in controversy under § 1332." *Id.* at 641. The court went on to state that "the district court correctly held that it could not exercise supplemental jurisdiction over the claims of these plaintiffs whose claims did not meet the $75,000 jurisdictional amount in controversy" even though one plaintiff's claims did exceed $75,000. *Id.* Faced with the possibility that one plaintiff would litigate in federal court while the remaining plaintiffs litigat-

ed the exact same issues in state court, the Tenth Circuit affirmed the district court's assumption that "plaintiffs desired to proceed together in a single class action" in state court and dismissed all plaintiffs' claims, including the plaintiff whose claim exceeded $75,000. *Id.* The court did not, however, address the fairness or constitutionality of denying the plaintiff whose claim exceeded $75,000 access to federal courts.

The Third Circuit then addressed the *Zahn* issue in *Meritcare Inc. v. St. Paul Mercury Ins. Co.,* 166 F.3d 214 (3d Cir. 1999). Writing for the court, Judge Weis[5] stated that even if the statute was unambiguous, it would still consider "the legislative history because this is one of those rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *Id.* at 222 (internal quotations and citations omitted). The court held that § 1367 did not overrule *Zahn* because it was convinced that Congress did not intend for § 1367 to "substantially expand diversity jurisdiction." *Id.* at 221–22. The court allowed the plaintiffs whose claims exceeded the jurisdictional requirement to continue in federal court, but remanded to state court the plaintiffs whose claims did not meet the jurisdictional amount. *Id.* at 225. Presumably, the Third Circuit's decision was not influenced by the notion of some plaintiffs litigating the identical factual and legal issues in federal court while other plaintiffs litigated the same issues in state court, nor did the possibility of inconsistent results give the court pause.[6]

---

**5.** Judge Weis served as the chairman of the Federal Courts Study Committee, *supra* note 4, and is known by this Court to be an exceedingly respected judge.

**6.** For a sampling of district court cases addressing this issue, *see Leszczynski v. Allianz Insurance,* 176 F.R.D. 659, 664 n. 3 (S.D.Fla. 1997) (listing cases); Wright, Miller & Cooper § 3704, p. 168–6 (same); Mark C. Cawley, Note, *The Right Result for the Wrong Reasons:*

*Permitting Aggregation of Claims Under 28 U.S.C. § 1367 in Multi–Plaintiff Diversity Litigation,* 73 Notre Dame L.Rev. 1045, n. 104 & 106 (1998) (same). Most recently, Judge Messitte addressed this issue in *Williams v. Potomac Elec. Power Co.,* 115 F.Supp.2d 561, 567–68 (D.Md.2000) (siding with the Fifth and Seventh Circuits and holding that the court could exercise supplemental jurisdiction over the class members whose claims did not meet the amount in controversy).

## D. This Court's Adoption of *Abbott*

These cases suggest that the dilemma faced by district courts in a class action lawsuit based on diversity of citizenship jurisdiction involving at least one party who satisfies the amount in controversy requirement can be resolved in one of three ways. First, as in *Meritcare*, the court can allow the party whose claim satisfies the amount in controversy requirement to proceed in federal court and remand the claims of the other parties to state court. This approach necessarily involves simultaneous litigation and presents the risk of inconsistent and perhaps preclusive results. Second, the district court can remand the entire case for adjudication in state court as in *Leonhardt*. The drawback to this approach is that it denies the parties whose case meets the jurisdictional amount access to federal courts even when they meet the statutory requirements of diversity jurisdiction. Third, as demonstrated in *Abbott* and *Stromberg*, the parties whose claims satisfy the amount in controversy can proceed in federal court and the district court can exercise supplemental jurisdiction over the claims of the other parties whose claims do not satisfy the amount in controversy requirement of diversity jurisdiction.

█ This Court concludes that the better reasoned approach is that embraced by the Fifth and Seventh Circuits and agrees that § 1367 legislatively overruled *Zahn*. While by no means binding, the Court finds persuasive that many members of Congress have appreciated the differing interpretations of the *Zahn* question and proposed a bill that clarifies the issue. The Interstate Class Action Jurisdiction Act of 1999, H.R. 1875, 106th Cong. (1999), amends 28 U.S.C. § 1332 and allows for the exercise of diversity jurisdiction in class actions where one class member meets the jurisdictional requisites. This bill passed the House of Representatives on September 23, 1999, and was in the Senate Committee on the Judiciary when this Congress recently adjourned.

Second, overruling *Zahn* will better equip federal courts to resolve complex interstate disputes that may not be well handled in the courts of some states. For example, some states have not adopted Rule 23 or an equivalent and so maintaining a class action in those states is difficult, if not impossible. Freer, 74 IND. L.J. at 20. Further, *Zahn* thwarts some of the chief functions of the class action device. Among other things, the class action was designed to "reduce units of litigation by bringing under one umbrella what might otherwise be many separate, but duplicating actions ... [and] to provide means of vindicating the rights of groups of people who individually would be without effective strength to bring their opponents into court at all." Cawley, 73 NOTRE DAME L. REV. at 1054. *Zahn* hinders this two-fold goal by forbidding district courts from exercising jurisdiction over unnamed plaintiffs with jurisdictionally insufficient claims.

The *Zahn* rule presents two equally unattractive options for the unnamed class action plaintiff with a jurisdictionally insufficient claims. One option is to file an individual action in state court. Failing to meet the amount in controversy requirement, however, suggests that the plaintiff's legal bills would more than outweigh his or her damages. This situation is particularly poignant where the defendant is a large entity which can afford drawn-out litigation and expensive experts. The second possibility is for the plaintiff to drop the suit altogether. This result encourages mass "nickel-and-dime theft" especially from consumers who have little economic incentive to pursue civil remedies. Cawley, 73 NOTRE DAME L. REV. at 1055. Further, some states also require class action plaintiffs to have minimum contacts with the state and where the injury suffered by the plaintiffs occurs in multiple states, this requirement presents a substantial barrier to maintaining multi-state class actions in state court. *Id.; see* Patricia M. Noonan, Note, *State Personal Jurisdictional Requirement and the Non–Aggregation Rule*

*in Class Actions,* U. ILL. L. REV. 445, 458–60 (1987).

Third, overruling *Zahn* furthers the true intent of diversity jurisdiction. Diversity jurisdiction is intended to provide an impartial tribunal, free from local bias or influence, to decide controversies between citizens of different states. *See generally* 15 JAMES WM. MOORE ET AL, MOORE'S FEDERAL PRACTICE ¶ 102.03 (3d ed.1998). In other words, overruling *Zahn* would protect nonlocal defendants in nation-wide class actions from the supposed hometown advantage of a local litigant in state court by providing access to federal courts. Freer, 74 IND. L.J. at 9.

One court has expressed concern that overruling *Zahn* will "allow[ ] thousands of small claims into federal court via the class device." *Stromberg Metal Works, Inc. v. Press Mechanical, Inc.,* 77 F.3d 928, 931 (7th Cir.1996). This Court, however, views this risk of inundation as remote. Presumably, there will be few cases in which the representative claims more than $75,000 and the class members have small claims. If the class members' claims are substantial, they may well opt out of a Rule 23(b)(3) class to pursue individual litigation. If they do not, overruling *Zahn* permits realization of the economies of the class device. Freer, 74 IND. L.J. at 20. Experience in those courts that have concluded that the supplemental jurisdiction statute abrogated *Zahn* indicates no hint of a docket crises. *Id.* Granted, the *Zahn* rule does reduce the managerial burdens placed upon federal courts by multi-plaintiff litigation and by large diversity class actions. However, this Court does not believe that judicial economy is served by merely shifting the administrative burdens of multi-plaintiff litigation from federal courts to already crowded state courts. Cawley, 73 NOTRE DAME L. REV. at 1056. In fact, the *Zahn* rule actually creates more managerial burdens than it alleviates for defendants because it "imposes the expensive and inconvenient burden of defending in multiple fora" which may be governed by different law and procedures. *Id.* at 1057.

Fourth, allowing district courts to exercise supplemental jurisdiction over all claims avoids the "untenable result of simultaneous litigation in the state and federal courts involving the same parties and issues." *Averdick v. Republic Fin. Serv., Inc.,* 803 F.Supp. 37, 45 (E.D.Ky.1992). *See also Kennedy v. Commercial Carriers, Inc.,* 739 F.Supp. 406, 413 (N.D.Ill.1990) (warning that simultaneous litigation in both the federal and states courts results in a "duplication of effort and a consequent waste of resources, potential inconsistent results between federal and state courts, and disputes over which court has jurisdiction of different class members, depending on whether the particular class member's claim exceeded the jurisdictional amount"). Overruling *Zahn* promotes the efficient administration of justice. A contrary holding would force a plaintiff to forego or postpone claims against a defendant or bring parallel actions in state and federal court will all the duplication and chance of inconsistency that such a course entails in addition to raising the specter of preclusive judgments.

Fifth, the trend, led by the Supreme Court and Justice Scalia in particular, is to restore the primacy of statutory language. *See generally* William N. Eskridge, Jr., *The New Textualism,* 37 UCLA L. REV. 621 (1990). This campaign is a reaction against the perceived abuse of legislative history to construe statutes contrary to their enacted language. *See, e.g., Green v. Bock Laundry Mach. Co.,* 490 U.S. 504, 529, 109 S.Ct. 1981, 104 L.Ed.2d 557 (1989) (Scalia, J., concurring). In such cases, the Justices argue that it is by no means certain that Congress really intended the result. *See, e.g., Public Citizen v. United States Dept. of Justice,* 491 U.S. 440, 470–71, 109 S.Ct. 2558, 105 L.Ed.2d 377 (Kennedy, J. concurring); *Blanchard v. Bergeron,* 489 U.S. 87, 98, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989) (Scalia, J., concurring). This movement points out that Article I of the Constitution makes no provision for the enactment of legislative intent, but only provides for the process of translating

that intent into statutory language. *See, e.g., In re Sinclair,* 870 F.2d 1340, 1343–44 (7th Cir.1989) (Easterbrook, J.).

The Eleventh Circuit has applied the same rules of statutory construction to give effect to the plain meaning of statutes. *See Consolidated Bank v. United States,* 118 F.3d 1461, 1464 (11th Cir.1997); *McNely v. Ocala Star Banner,* 99 F.3d 1068, 1075 (11th Cir.1996); *Resolution Trust Corp. v. Fragetti,* 49 F.3d 715, 717 (11th Cir.1995). It is only "[i]n rare and exceptional circumstances [that a court] may decline to follow the plain meaning of a statute because overwhelming extrinsic evidence demonstrates a legislative intent contrary to the text's plain meaning." *Michetti Pipe Stringing v. Murphy Bros.,* 125 F.3d 1396, 1398 (11th Cir.1997).

Sixth, this Court has noted the trend by plaintiff's counsel to purport to waive all punitive damage claims and to limit compensatory damages to less than $75,000 per class member in order to avoid federal court. *See Davis v. Carl Cannon Chevrolet-Olds, Inc.,* 182 F.3d 792, 799 (11th Cir. 1999) (Nangle, J. concurring). Even if such a waiver and limitation were effective, the reality of the situation is that plaintiffs will likely seek to amend their complaint and seek greater amounts of damages after the one year removal window has closed. *See* 28 U.S.C. § 1446(b) (providing that a case may not be removed on the basis of diversity of citizenship jurisdiction more than one year after it was commenced in state court). Overruling *Zahn* would thwart this type of egregious forum manipulation.

Finally, this Court concludes that it is inappropriate for federal courts to define their own jurisdiction by ignoring contrary statutory provisions in the guise of interpretation. Under Article III of the Constitution, that job belongs to Congress. U.S. Const. Art. III, § 1. *See generally* Thomas C. Arthur and Richard D. Freer, *Grasping at Burnt Straws: The Disaster of the Supplemental Jurisdiction Statute,* 40 EMORY L.J. 963, 988 (1991). One of the most important compromises in the Constitutional Convention left to Congress the questions of whether there should be inferior federal courts and, if so, what should be the scope of their original jurisdiction. *Id.* Then, as now, the scope of federal jurisdiction was controversial, involving delicate questions of the proper allocation of authority between the federal and state governments. For this reason, the drafters agreed that Article III would merely delineate the permissible scope of federal subject matter jurisdiction, leaving Congress to determine how much of this jurisdiction should be actually exercised by the federal rather than by the state courts. *Id.* at 989. This Court finds no reason to evade this compromise and concludes that it should follow the enacted statute and not judicial interpretations which define the jurisdiction of federal courts.

## IV. JURISDICTION IN THIS CASE

Having determined that § 1367 allows this Court to exercise supplemental jurisdiction over all class members if one class member's claim exceeds $75,000, the requisite jurisdictional amount, the question is then whether either of the named plaintiffs' claims meets this requirement.

■ If plaintiff Bias brought his suit individually, it is clear that this Court would have jurisdiction over his claim by virtue of diversity of citizenship jurisdiction. "Where a plaintiff's complaint includes a claim for rescission of an insurance policy, the face value of the policy is considered in determining whether the jurisdictional amount is met under § 1332." *Knauer v. Ohio State Life Ins. Co.,* 102 F.Supp.2d 443, 445 (N.D.Ohio 2000) (citing *Massachusetts Cas. Ins. Co. v. Harmon,* 88 F.3d 415, 416 (6th Cir.1996)). *See also Bell v. Preferred Life Soc'y,* 320 U.S. 238, 240, 64 S.Ct. 5, 88 L.Ed. 15 (1943) (stating that the maximum potential value of the policy is to be used to determine the amount in controversy and not the amount of premiums paid in a suit for fraudulent inducement).

■ Plaintiff Bias seeks rescission of policy number 001269764V, which had a face value of $120,298 in October 1998, when plaintiff filed suit. Phillips Aff. at 2 (Doc. 30).[7] This amount clearly exceeds $75,000 exclusive of costs and interest. Therefore, this Court has jurisdiction over the claims of plaintiff Bias pursuant to diversity of citizenship jurisdiction. 28 U.S.C. § 1332.[8]

Having concluded that the claims of one of the named plaintiffs exceeds the amount in controversy requirement of 28 U.S.C. § 1332, this Court holds that § 1367 authorizes it to exercise supplemental jurisdiction over the other class members whose claims do not exceed $75,000.

## V. APPLICATION OF *COHEN*

Earlier this year, the Eleventh Circuit in *Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir.2000) decided to abrogate its prior decision in *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1358–59 (11th Cir.1996) and follow the decision of *Lindsey v. Alabama Telephone Co.*, 576 F.2d 593 (5th Cir.1978).

In *Lindsey*, plaintiffs brought suit in state court and defendants sought to remove the case to federal court. *Lindsey*, 576 F.2d at 593–94. In determining that the federal district court did not have subject matter jurisdiction over the case, the *Lindsey* court stated:

> the complaint nowhere alleges the number of persons in the class, an allegation that would have permitted the court to ascertain what dollar amount represents the amount in controversy for each member of the class. Since the status of the case as disclosed by the plaintiff's complaint is controlling in the case of removal, it was not open for defendants to attempt to show that the class was small enough that the claims on its behalf exceeded the sum of $10,000 per capita. Nor was it open to the district court to speculate that such was in fact the case.

*Id.* at 595 (internal quotations and citations omitted). In other words, the punitive damages claim for the class must be assigned on a pro rata basis to each class member for amount in controversy purposes.

Eighteen years later, the Eleventh Circuit decided in *Tapscott* that a class claim for punitive damages should be considered in the aggregate. *Tapscott*, 77 F.3d at 1357–59.

In *Cohen*, the Eleventh Circuit held that the district court did not have subject matter jurisdiction because each plaintiff's claim did not exceed the amount in controversy requirement. *Cohen*, 204 F.3d at 1076–77. The class of plaintiffs consisted of 39,000 members and claimed $10,000,000 in punitive damages. *Id.* at 1077. Dividing $10,000,000 by 39,000 class members revealed that each class member's share of the claim was about $256. *Id.* The Eleventh Circuit based its conclusion that the district court did not have subject matter jurisdiction in part on *Zahn*'s mandate

7. Plaintiffs point out that this figure represents the combined face value of the policy and, without citing any supporting law, assert that this figure has "no bearing on the amount in controversy." Pls.' Reply Mem. Regarding Subject Matter Jurisdiction at 2 (Doc. 36). The Court notes, however, that plaintiff Bias is seeking the rescission of a single policy and concludes that on whose life the benefits were to be paid and in what proportion is irrelevant. Further, it is an axiom of federal civil judicial procedure that the plaintiff may aggregate all his or her claims against a single defendant for purposes of meeting the jurisdictional amount. *See Edwards v. Bates County*, 163 U.S. 269, 16 S.Ct. 967, 41 L.Ed. 155 (1896) (permitting aggregation of plaintiff's tort and contract claims against a single defendant); *Leszczynski v. Allianz Insurance*, 176 F.R.D. 659, 666–67 (S.D.Fla.1997); 14B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3704 (3d ed.1998).

8. Plaintiff Poore seeks rescission of policy number 0014100410, which originally had a face value of $25,070, which was reduced to $11,103 in 1997. Def.'s Supplemental Submission Regarding Subject Matter Jurisdiction at 1. (Doc. 37). This amount clearly does not exceed $75,000 and so the Court would not have jurisdiction over his claim if he brought suit individually.

that each class member individually satisfy the requisite amount in controversy requirement. *Id.* at 1073.

Having concluded that § 1367 overruled *Zahn,* this Court also must conclude that the *Cohen* rule is similarly no longer valid.

In addition, the continued vitality of *Cohen* would serve a severe blow to diversity jurisdiction. Taking the *Cohen* rule to its logical conclusion would indicate that the Eleventh Circuit abolished removal jurisdiction in diversity cases. First, it is exceedingly rare for a plaintiff to state a dollar amount in his or her complaint. Generally, a plaintiff will claim damages in a general statement such as "the enlightened consciences of fair and impartial jurors." Once the meaning of *Cohen* sets in, plaintiffs will rarely ask for a specific amount of damages in order to avoid federal court jurisdiction in situations where plaintiffs view state court as a tactical advantage. Second, in a class action, the number of the class members rarely is known until after the class is certified. Therefore, it will be impossible for defendants to calculate the pro rata amount of damages attributable to each plaintiff as mandated by *Cohen.* Accordingly, defendants will not ever be able to remove cases, even cases involving millions or billions of dollars in damages, to federal court.

The argument over the proper scope of federal courts' role in diversity cases may continue, but this Court concludes that the answer lies in legislative action and not with judicial decisions.[9]

Accordingly,

**IT IS HEREBY ORDERED** that this Court had jurisdiction at the time of removal. This case shall proceed in this Court.

9. Hopefully, Congress will reconsider this question and enact appropriate legislation during its next term and put an end to this and other fights over jurisdiction, one of the most wasteful types of litigation.