**Nelsida ARIAS, et al., Plaintiffs,**

v.

**AMERICAN AIRLINES, INC., et al., Defendants.**

**Civ. No. 01–1380(JP).**

United States District Court, D. Puerto Rico.

Aug. 27, 2001.

Ramon M. Gonzalez Santiago, San Juan, PR, for plaintiff.

Roberto Abesada–Aguet, Vicente & Cuebas, Diego A. Ramos–Cayon, Fiddler, Gonzalez & Rodriguez, San Juan, PR, Francisco Agrait Oliveras, Hato Rey, PR, for defendant.

## OPINION AND ORDER

PIERAS, Senior District Judge.

### I. INTRODUCTION

The Court has before it Co-defendant American Airlines, Inc.'s Motion to Dismiss for Lack of Subject Matter Jurisdiction (**docket No. 9**), which is joined by Co-defendant Puerto Rico Ports Authority (**docket No. 10**); Plaintiffs Nelsida Arias and Edilio De León Almonte's Opposition (docket No. 11); and American Airlines' Reply (docket No. 14). Plaintiffs bring this action in diversity pursuant to 28 U.S.C. § 1332(a)(2), as the Complaint alleges that Plaintiffs are citizens of the Dominican Republic and residents of Antigua, British Virgin Islands, that Co-defendant American Airlines is incorporated under the laws of the State of Delaware with its principal place of business in a State other than the Commonwealth of Puerto Rico, and that Co-defendant Puerto Rico Ports Authority is a Puerto Rico public corporation. The Complaint states that Co-plaintiff Arias slipped and fell in the Luis Muñoz Marín International Airport as a result of Defendants' negligent maintenance of the floor in the American Airlines terminal and/or failure to warn of an excessively slippery, overly waxed or polished floor. As a result of the fall, Arias contends that she fractured the patella in her left leg and suffered lower back injuries, for which she seeks $570,000.00 in damages. Co-plaintiff De León sues to recover for his own mental and emotional distress caused by his common law wife's injuries, loss of consortium, and lost income while he cared for her, which he claims amounts to $25,000.00.

Defendants move for dismissal for lack of subject matter jurisdiction, arguing that as a matter of law the claim of Co-plaintiff De León does not satisfy the jurisdictional minimum of $75,000.00. Pursuant to the "complete diversity" rule, therefore, Defendants contend that the Court lacks subject matter jurisdiction over this action. Plaintiffs oppose, arguing that 28 U.S.C. § 1367(a) permits the Court to exercise supplemental jurisdiction over the claims of Co-plaintiffs that do not independently meet the amount in controversy requirement.

### II. DISCUSSION

█ District courts have original jurisdiction over all civil actions in which the

amount in controversy exceeds $75,000.00 and the dispute is between "citizens of different States" or between "citizens of a State and citizens or subjects of a foreign state." 28 U.S.C. § 1332(a)(1)–(2). The "complete diversity" rule holds that all named defendants must be diverse from all plaintiffs to maintain a diversity suit. *See Strawbridge v. Curtiss,* 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806). In addition, the U.S. Supreme Court has historically interpreted § 1332's matter in controversy language to require that each plaintiff individually satisfy the amount in controversy. *See Zahn v. International Paper Co.,* 414 U.S. 291, 294–95, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973); *Snyder v. Harris,* 394 U.S. 332, 335–338, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969). Plaintiffs bear the burden of showing that the actual amount in controversy exceeds the jurisdictional minimum. *See Duchesne v. American Airlines, Inc.,* 758 F.2d 27, 28 (1st Cir.1985) (citing *Gibbs v. Buck,* 307 U.S. 66, 72, 59 S.Ct. 725, 729, 83 L.Ed. 1111 (1939)).

In the Complaint, Co-plaintiff De León claims only $25,000.00 in damages. Thus, his claim does not satisfy the jurisdictional minimum. In fact, Plaintiffs do not contest the amount sought by De León. Rather, they seek to avoid dismissal by arguing that the plain language of 28 U.S.C. § 1367(a) permits the exercise of supplemental jurisdiction over De León's claim. They rely on the decisions of two district courts for this proposition. *See Lindsay v. Kvortek,* 865 F.Supp. 264 (W.D.Pa.1994); *Garza v. National Am. Ins. Co.,* 807 F.Supp. 1256 (M.D.La.1992).

Although Plaintiffs cite only these two district court decisions, a much larger debate has been spurred concerning the interpretation of § 1367—enacted as part of the Judicial Improvements Act of 1990— generating a split in the circuits and in the district courts. In 1973, the U.S. Supreme Court in *Zahn,* relying on a long line of historical precedent, construed the diversity statute to require that each plaintiff individually satisfy the amount in controversy requirement, even in class actions. *See Zahn,* 414 U.S. at 294–95, 94 S.Ct. at 508–09 (citations omitted). In 1990, Congress enacted § 1367, entitled "Supplemental jurisdiction," which provides, in relevant part:

(a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

Plaintiffs argue that the enactment of § 1367 had the effect of overruling *Zahn's* requirement that each plaintiff meet the jurisdictional amount in controversy. Therefore, they argue, if Co-plaintiff Arias satisfies the $75,000.00 jurisdictional amount in controversy, the Court may exercise supplemental jurisdiction over the claims of Co-plaintiff De León even though he cannot meet the jurisdictional minimum.

■ The Fifth and Seventh Circuits have held that the courts may exercise supplemental jurisdiction to hear the claim of a party whose loss does not meet the jurisdictional minimum. *See Stromberg Metal Works, Inc. v. Press Mechanical, Inc.,* 77 F.3d 928 (7th Cir.1996); *In re Abbott Laboratories,* 51 F.3d 524 (5th Cir. 1995), *aff'd sub nom, Free v. Abbott Laboratories, Inc.,* 529 U.S. 333, 120 S.Ct. 1578, 146 L.Ed.2d 306 (2000). The U.S. Su-

preme Court granted certiorari in the Fifth Circuit case, but the Court's equally divided vote to affirm merely ended the process of direct review without settling whether the enactment of § 1367 effectively superceded *Zahn.* This is because no precedential weight is afforded an affirmance by an equally divided Court. *See Rutledge v. United States,* 517 U.S. 292, 304, 116 S.Ct. 1241, 134 L.Ed.2d 419 (1996); *Neil v. Biggers,* 409 U.S. 188, 192, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). The Fifth and Seventh Circuits reasoned that the plain language of the statute permits the exercise of supplemental jurisdiction over any claim transactionally related to the principal claim. *See Stromberg,* 77 F.3d at 930–31; *Abbott Laboratories,* 51 F.3d at 528–29. While § 1367(b) enumerates certain instances in which the district court will not have supplemental jurisdiction,[1] those Courts found the text of § 1367(a) permitted the exercise of supplemental jurisdiction in those cases not precluded by § 1367(b).[2] Although the Fifth and Seventh Circuits acknowledged that the legislative history pointed to a contrary result—because Congress stated in the legislative history that it intended for *Zahn* to survive the enactment of § 1367—the Courts reasoned that because the statutory language was unambiguous, no inquiry would be made into contrary congressional intent. *See Stromberg,* 77 F.3d at 931 ("When text and legislative history disagree, the text controls."); *Abbott Laboratories,* 51 F.3d at 528 ("We cannot search legislative history for congressional

intent unless we find the statute unclear or ambiguous. Here it is neither.").

The Third, Eighth, Tenth, and Eleventh Circuits, on the other hand, have held that *Zahn* survives the enactment of § 1367, and thus in diversity actions each plaintiff must satisfy the amount in controversy requirement. *See Trimble v. Asarco, Inc.,* 232 F.3d 946, 961 (8th Cir.2000); *Morrison v. Allstate Indemnity Co.,* 228 F.3d 1255, 1275 (11th Cir.2000); *Meritcare Inc. v. St. Paul Mercury Ins. Co.,* 166 F.3d 214, 221–22 (3d Cir.1999); *Leonhardt v. Western Sugar Co.,* 160 F.3d 631, 637–41 (10th Cir. 1998). The Tenth Circuit, which addressed the matter in detail, first examined the statutory language to determine whether it was clear and unambiguous. *See Leonhardt,* 160 F.3d at 638. It found that a literal and textually faithful reading of § 1367(a) lead to the opposite conclusion from that of the Fifth and Seventh Circuits. In reaching this conclusion, the Tenth Circuit interpreted § 1367(a) as incorporating the existing rules of original jurisdiction, and then extending a grant of supplemental jurisdiction only after the plaintiff has submitted claims in a well-pleaded complaint that properly invoke such original jurisdiction. *See id.* at 640.

The Court found further support for this conclusion in § 1367(b). Section 1367(b) sets forth various situations in which a court, sitting in diversity, cannot exercise supplemental jurisdiction where the exercise of such jurisdiction "would be inconsis-

---

1. Section 1367(b) provides:
   In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs

under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

2. It is uncontested that the instant case does not fall within any of the exceptions listed in § 1367(b).

tent with the jurisdictional requirements of § 1332." 28 U.S.C. § 1367(b). "That very language evidences a concern for preserving the historical and well-established rules of diversity. The fact that § 1367(b) prohibits the addition of claims and parties which would destroy diversity supports our interpretation of § 1367(a) as also fully respecting the rules of diversity in cases invoking the original jurisdiction of the federal courts." *Leonhardt,* 160 F.3d at 640.

The Tenth Circuit bolstered its conclusion by looking at the legislative history of § 1367. It justified resort to legislative history as an aid to interpretation based on the fact that the two circuit courts that had addressed the issue came to a contrary result, while a majority of the district courts were in agreement with the result reached by the Tenth Circuit. *See id.* The House Report that accompanied the Judicial Improvements Act, the analysis of which was adopted by the Senate Judiciary Committee, *see* 136 Cong.Rec. S17580–81 (daily ed. Oct. 27, 1990), expressly states that § 1367 "is not intended to affect the jurisdictional requirements of 28 U.S.C. § 1332 in diversity—only class actions, as those requirements were interpreted prior to [*Finley v. United States,* 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989) ]." H.R.Rep. No. 101–734, at 29 (1990), *reprinted in* 1990 U.S.C.C.A.N. 6860, 6875. The House Report then cites *Zahn* as an example of the pre-*Finley* interpretation of the jurisdictional requirements of § 1332 that is not to be disturbed. *See id.* & n. 17. The House Report also states that the statute provides that "[i]n diversity cases, the district courts may exercise supplemental jurisdiction, except when doing so would be inconsistent with the jurisdictional requirements of the diversity statute." *Id.* at 28, *reprinted in* 1990 U.S.C.C.A.N. at 6874. Thus, the Tenth Circuit concluded from the legislative history that Congress did not intend to overrule the historical rules prohibiting aggregation of claims, including *Zahn*'s holding that each plaintiff in a diversity-based action must meet the jurisdictional amount in controversy under § 1332. *See Leonhardt,* 160 F.3d at 640–41. The Third Circuit reached the same conclusion by reference to the legislative history, as it found this to be "one of those rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *Meritcare,* 166 F.3d at 222 (internal quotations and citations omitted).

■ This Court agrees with the position of the Third, Eighth, Tenth and Eleventh Circuits. Many statutes come to take on a meaning perhaps unknowable from the statutory language itself, simply by virtue of the infinite applications of a given statute. Thus, the role of the Courts is, through the adjudication of cases, to fill in the meanings of statutes. Such is the case with § 1332, which came to be interpreted by the U.S. Supreme Court in *Zahn* and *Snyder,* as requiring that each plaintiff articulate a claim at or above the jurisdictional minimum in order for a federal court to have original jurisdiction in a diversity action. Although the Fifth and Seventh Circuits' reading of the plain language of § 1367 is technically plausible, this Court finds that a sounder approach in construing § 1367 takes into account the historical interpretation of § 1332 in *Zahn* and *Snyder.*

■ The claims brought by Co-plaintiff De León plainly do not satisfy the amount in controversy requirement. While Defendants seek the dismissal of the entire suit on that basis, this Court agrees with Plaintiffs that the better result is to dismiss the claims of De León and permit the rest of the suit to proceed.

## III. CONCLUSION

Consistent with the foregoing discussion, the Court hereby **GRANTS** Defendants' Motion to Dismiss, but only as to the claims of Co-plaintiff De León.

**IT IS SO ORDERED.**